David N. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CF–533.

District of Columbia Court of Appeals.

Argued Oct. 1, 2003.
Decided Sept. 16, 2004.

---

Peter H. Meyers, appointed by the court, for appellant.

Mary B. McCord, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Stephen J. Pfleger, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

David N. Williams, appellant, was convicted, after a jury trial, of one count of conspiracy to commit murder (D.C.Code §§ 22–105(a), –2401, –2403), one count of first degree murder while armed (D.C.Code §§ 22–2401, –3202), four counts of assault with intent to kill while armed (AWIKWA) (D.C.Code §§ 22–501, –3202), two counts of possession of a firearm during a crime of violence (PFDCV) (D.C.Code § 22–3204(b)), and one count of possession of a prohibited weapon (PPW) (D.C.Code § 22–3214(b)).[1] Williams was originally joined as a co-defendant with Curtis Morten, Donnell Woodson, James Holston, and Jermaine Felder. Convictions of those co-defendants were reversed August 12, 2004 (Nos. 97–CF–1263, 02–CO–54, 97–CF–1393, 97–CF–1406, and 97–CF–1557). Due to illness of Williams' counsel, his indictment was severed and tried at a later date on essentially the same testimony, theory of criminal liability, and arguments to the jury. We post-

1. All citations are to the 1981 D.C. Code as they existed at the time of the indictment.

poned our ruling in both appeals pending the holding of the Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and subsequently asked the parties to address the implications of *Crawford* on the facts of this case. What followed was a concession by the government that in light of the *Crawford* holding, some of the statements admitted as statements against penal interest violated Williams' Sixth Amendment rights.[2] Accordingly, the question before us becomes whether the admission of those out-of-court statements of non-testifying co-defendants, admitted in conceded error, was harmless under the standard established in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We conclude for substantially the same reasons expressed in the opinion reversing the *Curtis Morten, et al.* convictions that it was not and that reversal is required.

### I.

In early 1995, the Southeast D.C. neighborhoods of Stanton Terrace and Parkland were home to two groups of men who go by the names "Stanton Terrace Crew" (STC) and "Parkland Crew" (PC) respectively. Williams was known to be a member of the STC. These two crews were involved in selling crack cocaine on a strip of Savannah Terrace, Southeast. For the most part, the two crews carried on their individual sales activities without conflict until March 20, 1995. On March 20, 1995, Leonard Anderson (a/k/a Lo or Leno), an STC member, was shot and killed, igniting a "beef" between the STC and PC.[3]

After Anderson's death, the "beef" manifested itself in threats of violence[4] and shootings, by various STC members, including the appellant, of PC members seen in STC territory or areas accessible to STC members. The stated motivation of the "beef" was twofold: (1) to get revenge for Anderson's death, and (2) to get the PC out of Savannah Terrace so the STC could corner the market on crack cocaine sales in that area. The culmination of the conflict between the STC and the PC was a string of shootings occurring on May 11, 1995 and May 14, 1995,[5] resulting in the death of two people and injury of several others, including some innocent citizens.[6] The actions of the STC members, including Williams, during this two-day period serve as the basis for the charges and subsequent convictions in this case.

At trial, the government provided evidence of Williams' membership in the STC and his participation in the events following the death of Leonard Anderson. Spe-

---

2. The government conceded that the video-taped statement of co-defendant Antwanne Kilgore and the plea proceeding statements of co-defendants Kilgore and Michael Thomas were testimonial hearsay and thus, under the holding of *Crawford,* admitted in error. The government does not make the same concessions with regard to the final piece of hearsay evidence at issue, the diary of unindicted co-conspirator Darren McIntyre. It contends that McIntyre's diary was not "testimonial" as discussed in *Crawford* and that it was properly admitted. But *see, infra,* note 8.

3. Members of the STC believed that members of the PC had killed Anderson.

4. After Anderson's death, the appellant and other members of the STC would approach members of the PC and inquire whether they were "with it"(involved in the "beef") or not. They would subsequently threaten the PC member that if they were "with it" they would be killed.

5. It is undisputed that Williams was not present at the May 14, 1995 shooting of Michael Thompson. The government proceeded on the theory of co-conspirator liability.

6. Innocent bystanders Martin Tyndle, Gemese Tyndle, and Larell McCauley were struck during the hail of gunfire on May 11, 1995.

cifically at issue are the admission of a portion of a diary written by an unindicted co-conspirator, Darren McIntyre (see note 8, *infra*), a videotaped custodial confession of a co-defendant, Kilgore, who pleaded guilty, and statements made during plea proceedings by Kilgore and one Thomas, all arguably implicating Williams. These statements were admitted as statements against penal interest.

## II.

■ The Supreme Court, in *Crawford*, *supra*, held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.*, 541 U.S. at ——, 124 S.Ct. at 1374. The Court, while not expressly defining the term "testimonial hearsay," further stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* Accordingly, as it must, the government concedes that Kilgore's videotaped confession to police was "testimonial hearsay" and, having been admitted with-

out the opportunity for cross-examination of Kilgore, was admitted erroneously. It contends that the statements made by both Thomas and Kilgore during their respective plea proceedings were testimonial and thus admitted in error.[7] *Crawford*, although decided after Williams' trial, is binding on this court. *See, e.g., Davis v. Moore*, 772 A.2d 204, 226 (D.C.2001) (en banc).

■ Where a conviction is based upon the admission of evidence in violation of a defendant's Sixth Amendment right to confrontation, it is reversible unless the error is "harmless beyond a reasonable doubt." *Lilly v. Virginia*, 527 U.S. 116, 140, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting *Chapman, supra*, 386 U.S. at 24, 87 S.Ct. 824). This standard requires that the government show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24, 87 S.Ct. 824. Accordingly, where there is a "reasonable possibility that" the plea statements of Kilgore and Thomas and the videotaped statement of Kilgore "contributed to [Williams'] conviction[s]," we must reverse.[8] *Schneble v. Florida*, 405 U.S. 427,

---

7. While the government concedes that the plea statements of Thomas and Kilgore were testimonial and that their admission was erroneous, it contends that Williams did not preserve his objection to their admission and that they should therefore be reviewed for plain error only. Counsel for Williams did not expressly object during trial to the admission of the Thomas and Kilgore plea statements; however, he did file a notice with the court that he was joining in all motions of the co-defendants and it was understood from the beginning of the trial that the judge was adopting the evidentiary rulings made in the prior trial. It was further understood that counsel for Williams could raise any issue anew if he so chose and the court would reconsider its prior ruling. Due to the fact that the court in the prior trial had already ruled against the defendants' objections to

admission of the plea statements, we are persuaded that the trial court's general adoption of its prior rulings and Williams' prior notice to adopt the motions of his co-defendants was sufficient to preserve Williams' objection; thus we review the admission of the plea statements under the standard set forth in *Chapman, supra*, 386 U.S. at 24, 87 S.Ct. 824.

8. Both the government and Williams agree that the fourth hearsay statement, the diary of Darren McIntyre, is not "testimonial hearsay" under the holding of *Crawford*. They disagree, however, on whether the diary would be properly admitted under an exception to the hearsay rule. In light of our determination that the admission of the plea statements and the videotaped statement were not harmless error, we do not address the issue raised by the admission of McIntyre's diary. The

432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (citing *Chapman, supra*).

## III.

█ As noted in our opinion dealing with Williams' co-defendants, we must address the harmlessness of the error separately for Williams' conviction for conspiracy and his convictions for multiple substantive offenses. We begin with the conspiracy conviction. The government argues that Williams' participation in the STC, the resulting conspiracy, and any acts in furtherance of the conspiracy were established by independent evidence and, therefore, not reliant on the videotaped confession of Kilgore or the plea statements of Kilgore and Thomas. It further contends that the trial court's redacting of the names from the statements alleviated any prejudice to the appellant. We cannot agree.

The independent evidence referred to by the government primarily included the testimony of Mark Barnes, a co-conspirator, who testified pursuant to a plea agreement with the government. Barnes provided extensive testimony regarding the inner workings of the STC, the hierarchy of the organization, and the plan to kill members of the PC in retaliation for the killing of STC member Anderson and to take sole control of the drug trade in the neighborhood. However, Barnes was far from an unblemished witness. He had an extensive criminal background, and as a result of his plea agreement with the government, was not going to be prosecuted for

several serious crimes including a charge of capital murder in Maryland. The statements of Kilgore and Thomas were not presented to the jury as having been made in the course of plea proceedings. Instead, the statements were identified only as having been made during an official court proceeding. Accordingly, it is reasonable to believe that the jury could have seen Barnes as a man with strong incentives to testify in support of the government's theory of the case, and could have discredited or accorded less weight to Barnes' testimony, while giving greater weight to the plea statements of Kilgore and Thomas because it knew little about the circumstances—*i.e.*, agreements to plead guilty—in which they were made.[9] *See Morten, supra.*

Perhaps recognizing some of the problems with relying on Barnes' testimony to support the charge of conspiracy, the prosecutor, in closing argument, drew the jury's attention both to the videotaped statement of Kilgore and to the plea statements of Kilgore and Thomas. The prosecutor reiterated that Kilgore was a "higher-up" member of STC than Barnes was, implying that Kilgore's statements should be looked at and considered more seriously than Barnes'. He encouraged the jury to look at the videotape again and to read the statements carefully and that it would be "crystal clear" that Williams was a member of the STC and that he was guilty of conspiracy. The emphasis placed on the Kilgore videotaped statement and the plea statements by the prosecution show that

---

diary, even if properly admitted, was not sufficient to alter our constitutional harmless error analysis.

**9.** In support of its contention that the admission of the statements at issue was harmless, the government also refers to several other witnesses who testified to the existence of an organized group of men known in the com-

munity as the STC but none of the other witnesses were held out as elevated members within the organization as Kilgore was. Accordingly, it is "reasonably possible," that the jury would give his videotaped statement greater weight than the testimony of other lesser members of the organization. *Schneble,* 405 U.S. at 432, 92 S.Ct. 1056, citing *Chapman.*

the evidence was used to strengthen otherwise less than compelling proof of guilt.[10] *See Allen v. United States,* 837 A.2d 917, 923 (D.C.2003). We are unable to conclude beyond a reasonable doubt that its admission "did not contribute to the [guilty] verdict obtained" on the charge of conspiracy to commit murder. *Chapman,* 386 U.S. at 24, 87 S.Ct. 824. Accordingly, Williams' conviction for conspiracy must be reversed.

## IV.

■ We turn now to Williams' convictions for multiple substantive crimes stemming from the events of May 11th and May 14th. The government presented numerous eyewitnesses who testified as to the events of May 11th and May 14th and argues that this extensive testimony amply supported Williams' substantive convictions and that Williams would have been convicted even without the videotaped statement of Kilgore or the plea statements of Kilgore and Thomas. We cannot agree.

One of the first things that the prosecution stated during its closing argument was that the jury may want to consider deciding the conspiracy count first, because if it found that the appellant was guilty of the conspiracy count, then it could also find him guilty of all the other substantive offenses under the theory of co-conspirator liability even if he was not present at the time the offense was committed. This proposition was reiterated in the judge's instructions to the jury. The judge *stated that evidence against* "one participant in furtherance of a joint criminal venture can be held against another participant, since each participant in a shared venture is responsible as a principal, even though he does not personally commit each of the acts that constitute the offense." This instruction allowed the jury to conclude that Williams was guilty of the substantive offenses charged largely on the basis that he was a member of the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *Akins v. United States,* 679 A.2d 1017, 1028 (D.C.1996) (citing *Pinkerton*). But Williams' membership in the conspiracy, as we have seen, was established largely by Kilgore's videotaped statement and the plea statements of Kilgore and Thomas, and by the prosecution's emphasis on that evidence.

Finally, the prosecutor's use of the plea statements and the videotaped statement was not confined, as argued by the government, to establishing the existence of the conspiracy. Rather, in closing argument, the prosecutor used the statements to establish motive for the appellant's commission of the substantive offenses. Specifically, he stated in rebuttal argument, that "[t]he reason why it's brought to you is so that you can understand what happened, so that you can understand what motivates these people to be together and to act together." While the government did present extensive evidence, exclusive of the statements at issue, to prove the substantive offenses committed of May 11th and May 14th, it ultimately relied on the plea statements and Kilgore's videotaped statement to tie the eyewitnesses' testimony to the appellant's alleged motive.

Based on the government's reliance on a theory of co-conspirator liability and our

10. We are unpersuaded by the government's contention that the statement's prejudicial value was reduced by redacting the name of the appellant. The statements here, while removing the name of the appellant, were still admitted against him alone and therefore the likelihood that the jury would equate him with the "name deleted" in the statement is high.

holding on the conviction of conspiracy as set forth above, as well as the prosecution's use of Kilgore's videotape statement and the plea statements to establish Williams' motive for the substantive offenses, we are unable to conclude beyond a reasonable doubt that the plea statements and the videotaped statement "did not contribute to the verdict[s] obtained" on the substantive counts against Williams.[11] *Chapman,* 386 U.S. at 24, 87 S.Ct. 824. Accordingly, we reverse all of Williams' convictions and remand for a new trial.

*So ordered.*

**11.** After the filing of supplemental briefs, the government invited our attention to *United States v. Saget,* No. 03–1200, 2004 U.S.App. Lexis 15529 (2d Cir. July 28, 2004), which—although involving a hearsay exception not relevant here—contains an excellent analysis by that court of the impact and breadth of the *Crawford* holding. Given the concessions by the government, we find the *Saget* holding that the challenged testimony there was not testimonial of no moment to our holding here.