Revena S. CALLAHAM, Appellant

v.

UNITED STATES, Appellee.

No. 05–CM–1238.

District of Columbia Court of Appeals.

Argued Dec. 12, 2006.
Decided Dec. 13, 2007.

Walter S. Booth, Bethesda, MD, appointed by the court, was on the brief for appellant.

Jamila Z. Hoard, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Elizabeth Trosman, and Margaret A. Sewell, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

KRAMER, Associate Judge:

At the conclusion of a bench trial, appellant, Revena Callaham, was convicted of possession of cocaine, in violation of D.C.Code § 48–904.01(d) (2001) and sentenced to 180 days imprisonment. The trial court suspended the term of imprisonment and placed Callaham on nine months of supervised probation. Callaham now seeks reversal of her conviction, claiming that the trial court erred when it permitted the government to introduce the analysis of the substance alleged to be cocaine through the report of a Drug Enforcement Agency (DEA) chemist who analyzed the substance, rather than requiring the government to call the chemist for direct and cross-examination. Based upon the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354,

158 L.Ed.2d 177 (2004), and our decision in *Thomas v. United States,* 914 A.2d 1 (D.C. 2006), *cert. denied,* —— U.S. ——, 128 S.Ct. 241, 169 L.Ed.2d 160 (2007), we conclude that Callaham's conviction must be reversed.

## I.

■ The facts underlying this matter are straightforward. On the date at issue, Metropolitan Police Department Officer Ramey Kyle was "observing narcotics activity in the area of Ninth and Kennedy Street, Northwest, from an observation post." Officer Kyle saw Callaham "approach another individual ... in front of ... Rocket Liquor Store ... [at] 900 East Street Northwest." Callaham exchanged an undeterminable amount of U.S. currency with an individual in front of the store in return for a small object. Suspecting that he had just witnessed a drug transaction, Officer Kyle radioed a description of Callaham and the other individual to a nearby arrest team, which stopped and arrested Callaham. After the arrest, Officer Kyle identified her as the person who had made the suspected narcotics purchase in front of the liquor store.

Officer Reginald Jones testified that on the day of Callaham's arrest, he was working a plain clothes detail. At the time of the transaction observed by Officer Kyle, he was "about two blocks away in the alleyway." When he received the lookout broadcast by Officer Kyle, Officer Jones "travel[ed] eastbound ... from the 900 block to the 700 block of Kennedy Street, Northwest," where he located Callaham. Officer Jones testified:

> [W]e [were] traveling eastbound. We stopped her in the 700 block of Kennedy Street, I exited the vehicle, approached the defendant, asked her if she had anything illegal on her. She stated yes, reached into her bag and pulled out a

clear zip with a white-rock substance in it that eventually tested positive for cocaine. She was placed under arrest. Following Callaham's arrest, Officer Jones field-tested the evidence recovered from Callaham. The results were positive for cocaine.

Well before the date set for trial, Callaham's counsel filed "Defendant's Motion to Dismiss the Information, or Alternatively, Compel Discovery," in which he noted that he had requested extensive discovery related to DEA drug-testing protocols and the training and qualifications of the DEA chemist who performed the tests, as well as "[a]n opportunity to inspect the DEA Mid–Atlantic Laboratory, the conditions of the laboratory, the storage of evidence, the procedures and protocols used in testing, and the machines used to test alleged controlled substances." Counsel represented that the requested discovery was material to the preparation of the case, in that he "intend[ed] to challenge the accuracy of the DEA laboratory's test results in this case." Counsel also argued that he needed the material "[i]n order to prepare adequately for cross-examination of the DEA chemist at trial." He further asserted that Callaham's "rights under the Confronta-

tion Clause of the Sixth Amendment would be violated if the government were allowed to admit the DEA–7 in lieu of testimony of the chemist without providing the requested materials." The motion apparently was denied.[1]

Several weeks before trial, the government filed a "Notice of Compliance Pursuant to 48 D.C.Code § 905.06," which stated, *inter alia*, that it intended to offer "reports of chain of custody and of analysis of a controlled substance" as evidence at trial. The notice also detailed the procedure the defense should follow in the event it wished to subpoena the chemist for examination, pursuant to D.C.Code § 48–905.06 (2001).[2] Attached to the notice was a copy of a "Certified Report of Controlled Substance Analysis"[3] (chemist's report), wherein the analyzing chemist signed a boilerplate statement attesting to her qualifications and duties; her compliance with practices for ensuring that the proper chain of custody was maintained; the validity and reliability of the methods and the proper functioning of the equipment used in the assay; and the accuracy of her report. The report confirmed that the white rock-like substance recovered from appellant was cocaine.

---

1. On the day of trial, Judge Boasberg asked defense counsel if he still intended to pursue the motion and was told that Judge Diaz had already ruled on it. While defense counsel did not specify what the ruling was, the record contains nothing that suggests that this discovery request was granted.

2. The full text of that statutory provision is as follows:

 In a proceeding for a violation of this chapter, the official report of chain of custody and of analysis of a controlled substance performed by a chemist charged with an official duty to perform such analysis, when attested to by that chemist and by the officer having legal custody of the report and accompanied by a certificate under seal that the officer has legal custody, shall be

 admissible in evidence as evidence of the facts stated therein and the results of that analysis. A copy of the certificate must be furnished upon demand by the defendant or his or her attorney in accordance with the rules of the Superior Court of the District of Columbia or, if no demand is made, no later than 5 days prior to trial. In the event that the defendant or his or her attorney subpoenas the chemist for examination, the subpoena shall be without fee or cost and the examination shall be as on cross-examination.

 D.C.Code § 48–905.06 (2001).

3. Such reports are commonly referred to as DEA–7s. *See Thomas, supra,* 914 A.2d at 7 n. 4.

On the trial date, the court inquired about preliminary matters before proceeding. Citing the Supreme Court's opinion in *Crawford*, defense counsel objected to the admission of the chemist's report in lieu of the live testimony of the chemist, asserting that such reports were "typical of testimonial evidence." The trial court overruled the objection, but stated: "You'll have obviously preserved the issue in the event [the Court of Appeals] rule[s] in your favor." During trial, when the government moved to admit the chemist's report into evidence, the defense renewed its objection, but the objection was again overruled. Officer Jones went on to testify that the number on the chemist's report matched the number on the document he had submitted to the DEA along with the evidence, and that the report stated the evidence contained 0.0494 grams of cocaine base.

█ Callaham now argues that the admission of the chemist's report in lieu of live testimony by its author was a violation of her Sixth Amendment confrontation right.[4] The government, on the other hand, argues that the chemist's report is a non-testimonial business record; that the provision of § 48–905.06 of the D.C.Code that grants the defendant the right to subpoena the chemist "for cross-examination at trial" satisfies the demands of the Confrontation Clause; and that if the admission of the report was error, it was harmless beyond a reasonable doubt.

## II.

In *Thomas*, we specifically addressed the government's argument that a chemist's report, including the actual chemical analysis, constitutes a non-testimonial business record, and thus is an exception to the rule against hearsay. In reliance on *Crawford, supra,* and the Supreme Court's subsequent decision in *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), we concluded that the chemist's report is a "core" testimonial statement, and accordingly, that "the Confrontation Clause bar[s] the prosecution from introducing the report at [a defendant's] trial without calling the chemist to testify in person, unless the chemist was unavailable and [the defendant] had a prior opportunity to cross-examine the chemist." *Thomas, supra,* 914 A.2d at 15. And this is without regard to "how reliable the testimonial evidence is perceived to be or whether it falls within a recognized hearsay exception (other than, possibly, the exception for dying declarations)." *Id.* at 11 (citation omitted). Therefore, the government's argument that the chemist's report is a non-testimonial business record cannot prevail.

The government also argues that the language of § 48–905.06 granting the defendant the right to subpoena the chemist "for cross-examination at trial" satisfies the Confrontation Clause. But *Thomas*

---

**4.** Appellant also claims that the government failed to establish that the District of Columbia had jurisdiction over the possession of cocaine offense because the government failed to establish that it occurred within the District of Columbia. That argument is without merit. "There is a presumption that an offense charged was committed within the jurisdiction of the court in which the charge is filed unless the evidence affirmatively shows otherwise." *Joiner–Die v. United States,* 899 A.2d 762, 766 (D.C.2006) (internal quotation marks and citation omitted); *see also Dyson v. United States,* 848 A.2d 603, 609 (D.C.2004) (citing *Adair v. United States,* 391 A.2d 288, 290 (D.C.1978)). No evidence was presented showing otherwise. Appellant's other argument that the trial court erred by allowing the government to reopen the evidence to allow an officer to testify specifically that the possession of cocaine occurred in the District is also without merit, since such testimony was unnecessary to establish jurisdiction.

rejected this argument also, again referring to the *per se* rule set out by *Crawford* that to adhere to the requirements of the Confrontation Clause, the government can introduce testimonial statements against a defendant only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Id.* Indeed, *Thomas* concluded that *"Crawford's* unqualified insistence on the declarant's unavailability as a precondition to admitting testimonial hearsay forecloses the argument that there exists an 'available to the accused' exemption from the demands of the Confrontation Clause." *Id.* at 15. Thus, we conclude that the trial court erred in admitting the chemist's report without providing Callaham an opportunity to cross-examine the chemist. The question remains, however, whether the error dictates that her conviction must be reversed.

## III.

■ In *Thomas,* the defendant had not raised a Confrontation Clause objection either before or during trial. Thus, we reviewed for plain error. *Id.* at 6; *see also Otts v. United States,* Nos. 04–CF–1139, 06–CO–1040, 936 A.2d 782 (D.C.2007) (applying *Thomas* and plain error review where an objection to a chemist's report based on the Confrontation Clause was raised for the first time on appeal). The "plain error" standard requires an appellant to show (1) that there was error; (2) that was plain, clear, or obvious; (3) that affected the defendant's substantial rights;

and (4) that the error seriously affected the fairness, integrity or public reputation of the proceedings. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Johnson v. United States,* 616 A.2d 1216 (D.C.1992).

*Thomas* concluded that there was error, and that it was plain, *i.e.,* obvious, at the time of the appeal. *Thomas, supra,* 914 A.2d at 21.[5] It also concluded that the error affected the defendant's substantial rights, that is, that admission of the chemist's report "had a prejudicial effect on the outcome of his trial." *Id.* As *Thomas* explained, "[t]he DEA chemist's report was the main, if indeed not the only, proof offered by the prosecution that the ziplocks distributed by appellant contained a measurable amount of a mixture containing cocaine—an essential element of the drug distribution offense with which appellant was charged." *Id.* at 22. "This is enough," the court concluded, "to establish that the erroneous admission of the report affected appellant's substantial rights." *Id.* (citation omitted).

When the court reached the last factor, of whether the admission of the chemist's report "undermine[d] the fairness, integrity and public reputation of judicial proceedings," however, it reached a contrary conclusion. *Id.* at 22–23. Looking first to the issue of fairness, the court reasoned that "[h]aving elected not to contest the identity of the cocaine mixture at his trial, appellant cannot claim that fairness requires that he nonetheless be given a chance to contest it now." *Id.* at 23.[6]

5. As the court stated in *Thomas,* "[u]sually, the issue is whether the error was plain at the time of trial...." 914 A.2d at 20. But, as the court went on to point out, the Supreme Court had held in *(Joyce) Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), that "in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the

time of appeal—it is enough that an error be 'plain' at the time of appellate consideration."

6. Looking at the question of fairness, the court also noted that the government had provided defense counsel with the chemist's report before trial, and that counsel thus had an opportunity to investigate and challenge the report, could have subpoenaed the chem-

With respect to the integrity of the proceeding, the court opined that there was "no reason whatsoever to believe that the chemist's report was unreliable," *id.*, particularly given the substantial circumstantial evidence that corroborated the chemist's finding that the substance sold was cocaine, as well as "the objective and routine nature of the testing, the use of a well-established chemical procedure, the duty of the chemist to be accurate, and the absence of any motive … to falsify the results." *Id.* (citing *Howard v. United States*, 473 A.2d 835, 839 (D.C.1984)). Finally, the court concluded that "given … the fairness of the procedure and the reliability of the evidence … it is difficult to see how the use of the DEA chemist's report at [the] trial otherwise could be thought to have impugned the public reputation of the ·proceeding," particularly since the admission was "in accordance with the settled law at the time of trial." Because Thomas was unable to meet this fourth criterion for· plain error review, his conviction was upheld. ·

## IV.

 Here, however, Callaham's counsel objected to the admission of the chemist's

report both before and during trial, and pointed specifically to Callaham's constitutional right under the Sixth Amendment to confront and cross-examine witnesses against her, most particularly the chemist. Thus, the plain error standard of review applied in *Thomas* is inapplicable.

 Although the error of allowing the government to introduce the chemist's report without calling the chemist to testify involved the denial of a constitutional right, it was an error in the trial process— that is, a "trial error"—as opposed to a "structural error." [7] Thus, the applicable standard of review is whether we can say that the denial of the opportunity to cross-examine the chemist "was harmless beyond a reasonable doubt." [8] *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Morten v. United States*, 856 A.2d 595, 600 (D.C.2004).

 The "harmless beyond a reasonable doubt" standard has been applied to other Confrontation Clause violations, including, for example, undue restrictions on bias cross-examination, *see, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *(Emmett) Jones v. United States*, 853 A.2d 146, 153 (D.C. 2004), as well as the admission of the

---

ist and never disputed the accuracy of the report.

7. "Structural errors" involve a "structural defect[]" in "the framework within which the trial proceeds, rather than simply an error in the trial process itself," making harmless error review inappropriate when such an error is in fact shown to exist. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We note, in contrast to "trial errors," that a ·"structural error" involving a violation of a constitutional right demands reversal without review for harmlessness.· *Id.* "Structural errors" include, for example, denial of the defendant's right to represent herself at trial, or trial by a judge who is not impartial. *Id.* at 310, 111 S.Ct. 1246.

8. In *Howard v. United States*, 929 A.2d 839 (D.C.2007), the defendant's trial counsel moved in limine, two days before trial, to exclude the chemist's report on Confrontation Clause grounds, and argued the issue at a hearing on the motion, but did not challenge the report's results at trial. *Id.* at 847. The trial court did not require the government to produce the chemist for cross-examination as a prerequisite for admitting the report. We reversed, noting that no waiver of the appellant's confrontation right could be inferred from the record. *Id.* at 847–48. We did not, however, engage in a full harmless error review of the admission of a chemist's report over the defense's confrontation right—based objection.

confessions of non-testifying co-defendants, *see, e.g., Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Morten, supra,* 856 A.2d at 595. Under this standard, if a statement is improperly admitted, we will reverse where we find a "reasonable possibility" that the statement contributed to the defendant's conviction. *Williams v. United States,* 858 A.2d 978, 981 (D.C.2004) (quoting *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). Thus, we turn to the question of whether there was a reasonable possibility that the admission of the chemist's report contributed to Callaham's conviction.

The two elements of the offense of possession of cocaine are (1) that the defendant possessed a controlled substance, which here would be a measurable amount of cocaine; and (2) that the defendant did so knowingly and intentionally. *See* D.C.Code § 48–904.01(a) (2001). Callaham did not contest that the substance in question was recovered from her, that is, that she possessed it. Moreover, the testimony showed that she possessed it knowingly and intentionally, since when asked whether "she had any illegal drugs on her," she herself turned over this substance. Thus, the only true issue at trial was whether the substance was cocaine.

While *Thomas* pointed out that circumstantial evidence can be used to prove that a substance is an illegal drug, there is virtually nothing in the record here that would circumstantially prove the substance transferred to Callaham was cocaine—indeed, not even the commonly made reference to the area of the transaction as "a high drug area," or an area known for the

sale of cocaine. *See, generally, Shelton v. United States,* 929 A.2d 420, 424–27 (D.C. 2007). Nor does a positive field test, standing alone, prove beyond a reasonable doubt that the substance was cocaine. *See Cook v. Edgewood Mgmt. Corp.,* 825 A.2d 939 (D.C.2003).[9]

Given the lack of evidence apart from the chemist's report that the white-rock substance recovered from Callaham contained cocaine, it is apparent that there is at the very least a "reasonable possibility" that the admission of the report contributed to Callaham's conviction. Indeed, when making its brief findings of fact, the trial court made clear reference to the results of the chemist's report immediately before rendering judgment, observing that the substance recovered from Callaham was "tested with a net weight of .07 grams and following testing what remained was 0[.]0494 grams, clearly a measurable amount of cocaine. So I find the defendant guilty of possession of cocaine." Under these circumstances, Callaham's conviction must be reversed and the case remanded for a new trial.

*So ordered.*

---

**9.** We note that in *Cook,* a civil proceeding to evict a tenant under the District of Columbia Residential Drug–Related Evictions Act of 1990 and a federal regulation concerning drug-related activity in federally subsidized housing, there was substantial evidence that corroborated the result of the field test that found the substance at issue to include a cocaine base.