**Rasheed A. DUVALL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 06–CM–21.**

District of Columbia Court of Appeals.

Submitted Dec. 9, 2008.

Decided July 16, 2009.

Charles H. Fitzpatrick, Washington, DC, appointed by the court, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, and Michael T. Ambrosino, Assistant United States Attorneys, were on the brief for appellee.

Before FERREN, BELSON, and NEBEKER, Senior Judges.

FERREN, Senior Judge:

Appellant Rasheed Duvall asks us to reverse his conviction for possession of a controlled substance. D.C.Code § 48–904.01(d) (2001). He contends that the government violated his constitutional rights under the Confrontation Clause of the Sixth Amendment by introducing a Drug Enforcement Administration (DEA) laboratory report in evidence against him without calling the chemist who prepared the report to testify in person, subject to cross-examination.[1] We agree—and the government concedes—that the Confrontation Clause was violated. Contrary to the government's position, however, we cannot conclude that the error was harmless be-

yond a reasonable doubt. Accordingly, we reverse and remand for a new trial.

## I.

On September 1, 2005, Metropolitan Police Department (MPD) Officer Charles Hoetzel was driving an unmarked police cruiser near the 200 block of Hamilton Street, N.W. He noticed a moving automobile with a cracked windshield and stopped it to investigate. The officer asked the driver, later identified as appellant Duvall, for his driver's license and registration information. Upon smelling the odor of marijuana emanating from Duvall's vehicle, he asked Duvall to step out and inquired whether there was anything illegal inside. Duvall got out of the car, told Officer Hoetzel that there was nothing inside, and invited the officer to "check the whole thing."

As Officer Hoetzel began his inspection, he noticed that the floor mat on the driver's side was "pushed up" against the front of the car. Lifting up the floor mat, he recovered a clear plastic bag containing a green weed substance that he suspected was marijuana. The officer testified at trial that after he had recovered the bag, Duvall spontaneously had exclaimed: "Oh, that bag, I forgot about it." By this point, other MPD officers had arrived, freeing Officer Hoetzel to conduct a field test on a portion of the green substance from the bag. The test yielded a positive color which, according to Hoetzel, indicated the presence of THC, the active ingredient in marijuana. Officer Hoetzel placed the bag in a heat seal for later submission for DEA analysis. He then arrested Duvall.

---

1. D.C.Code § 48–904.01(d) (2001) makes it "unlawful for any person knowingly or intentionally to possess a controlled substance" unless obtained pursuant to a valid prescription or otherwise authorized by law.

Officer Hoetzel was the government's only witness at trial.[2] In addition to Officer Hoetzel's testimony, the government introduced the heat seal and, over objection, the trial court also admitted the DEA–7 laboratory analysis, which indicated that the substance found inside Duvall's car was marijuana.[3] Counsel for Duvall objected that the DEA report was hearsay evidence, and that its admission in evidence would violate Duvall's Sixth Amendment rights. The trial court recognized that, as of the time of trial in November 2005, this court had not resolved whether a chemist's report constituted "testimonial" hearsay within the scope of Confrontation Clause protection. That said, the trial court overruled counsel's objection, concluding that because the existing statutory scheme permitted Duvall to subpoena the chemist if he wished to challenge the chemist's finding, the government's introduction of the DEA–7 without itself requiring the chemist to testify would not violate Duvall's Sixth Amendment rights.

On cross-examination, Officer Hoetzel testified that he had found no other drug paraphernalia, either in the vehicle or on appellant's person, and that he had not seen Duvall smoke or burn anything, or make any furtive gesture. Duvall then took the stand and testified that he had told Officer Hoetzel that he had had nothing illegal in his possession. Duvall also testified that, when confronted with the bag Officer Hoetzel had removed from under the vehicle's floor mat, Duvall had replied that it was not his. Duvall further testified that he had continued to deny ownership even after the officers pressed him several times to admit that the bag was his. Finally, according to Duvall, after the police had instructed him for the fourth time not to deny ownership—and while restrained by handcuffs—he had told the officers that "if there's any possibility of it being mine, it had to have been in there for months and months and months."

In closing arguments, the prosecution emphasized that the evidence confirmed that Duvall had constructively possessed a substance the DEA–7 showed to be a measurable amount of marijuana. Defense counsel emphasized that because Duvall had not known that the marijuana was in the vehicle, the prosecution could not prove a case of constructive possession. The trial court credited Officer Hoetzel's version of the facts, and found Duvall guilty of possessing a controlled substance. The court sentenced him to thirty days of incarceration, suspended, with one year of probation, and ordered him to complete sixty days of community service and to pay $50 to the Victims of Violent Crimes Compensation Fund.

## II.

After the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), this court concluded that a DEA drug-analysis report is "testimonial" evidence, and that "admission of the report into evidence without the presence of the chem-

2. The trial court consolidated Duvall's trial with the hearing on his pretrial motion to suppress his statements and the tangible evidence that the police had removed from his vehicle. Accordingly, Officer Hoetzel's testimony was relevant both to the legality of the seizure and the ultimate question of Duvall's guilt.

3. We note that the trial transcript contains no testimony as to the contents of the lab report. In closing argument, however, the government referenced the report and noted that the report found that the substance recovered from Duvall's car "tested positive for marijuana" with a reserve weight of 5.7 grams. The trial court found that the substance constituted a "measurable amount of marijuana."

ist who prepared it violates the defendant's constitutional right to confrontation unless the defendant validly waives the chemist's presence at trial." *Fields v. United States,* 952 A.2d 859, 861 (D.C.2008) (citing *Howard v. United States,* 929 A.2d 839, 841 (D.C.2007), and *Thomas v. United States,* 914 A.2d 1, 5, 19 (2006)). Recently, the Supreme Court agreed, holding that forensic analyst certificates are indeed testimonial under *Crawford. Melendez–Diaz v. Massachusetts,* —— U.S. ——, ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, 2009 WL 1789468, at *3–4 (2009). Duvall argues, and the government concedes, that admitting the DEA–7 in the present case without the in-court testimony of the preparing chemist violated Duvall's rights under the Confrontation Clause of the Sixth Amendment. The parties further agree on the applicable standard of review, constitutional harmless error, which Duvall has preserved by objecting to admission of the chemist's report on constitutional grounds, *see Callaham v. United States,* 937 A.2d 141, 146 (D.C.2007) (harmless error review preserved when appellant objected to introduction of DEA–7, pointing specifically to Sixth Amendment).[4]

■ Under the heightened constitutional standard of review, the government bears the burden of demonstrating that the constitutional error was "harmless beyond a reasonable doubt," meaning that the verdict was "surely unattributable" to the erroneously admitted evidence. *Fields,* 952 A.2d at 866 (quoting *Sullivan*

*v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (internal quotation marks omitted)). "Under this standard, if a statement is improperly admitted, we will reverse where we find a 'reasonable possibility' that the statement contributed to the defendant's conviction." *Callaham,* 937 A.2d at 147 (quoting *Williams v. United States,* 858 A.2d 978, 981 (D.C.2004) (internal citations omitted)); *see also Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (applying "reasonable possibility" standard in assessing harmless error as to confession admitted in violation of Sixth Amendment). We, therefore, turn to whether there was a reasonable possibility that the admission of the DEA laboratory report contributed to Duvall's conviction.

■ To prove Duvall's guilt of possession of a controlled substance, the government had to show that Duvall (I) possessed a controlled substance, and (ii) did so knowingly and intentionally. D.C.Code § 48–904.01(d) (2001); *Mitchell v. United States,* 683 A.2d 111, 114 (D.C.1996) (interpreting predecessor statute D.C.Code § 33–541(d) (1993 Repl.)). While the government must show with respect to the second element only that the offender knew that he was in possession of a controlled substance, the first element requires the government to "show either by direct or circumstantial evidence that the substance in question contained a measur-

---

**4.** We have noted the Supreme Court's ruling that a "structural error" withholding a constitutional right "demands reversal without review for harmlessness." *Callaham,* 937 A.2d at 146 n. 7 (citing *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). On the other hand, the Court has held that a constitutional error affecting only the "trial process," not reflecting a structural defect, may be harmless, not subject to automatic reversal. *See Delaware*

*v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (rejecting view that denial of confrontation right requires automatic reversal). In applying this distinction to the present case, we conclude that although the government's introduction of a DEA–7 report without calling the chemist to testify is an error of constitutional proportions, such an error is not structural and thus lends itself to constitutional harmless error analysis. *Callaham,* 937 A.2d at 146.

able amount of a controlled substance." *Thomas v. United States,* 650 A.2d 183, 197 (D.C.1994) (en banc) (interpreting predecessor statute, D.C.Code § 33–541 (1993)); *Callaham,* 937 A.2d at 147.

■ While conceding that the admission of the DEA–7 without requiring the chemist to testify violated Duvall's confrontation right, the government argues that the error was harmless beyond a reasonable doubt because the independent evidence of Duvall's guilt was overwhelming, *see Schneble,* 405 U.S. at 430, 92 S.Ct. 1056 (error under *Chapman* analysis may be harmless where evidence is "overwhelming"); *Hill v. United States,* 858 A.2d 435, 447–48 (D.C.2004) (same).[5] The government points to five factors it believes establish that there was no reasonable possibility that the erroneous admission of the lab report contributed to Duvall's conviction: (I) Officer Hoetzel received specialized training in identifying the smell of marijuana, (ii) he detected the odor of marijuana emanating from Duvall's vehicle, (iii) Officer Hoetzel recovered a "green weed substance" from the vehicle, (iv) the substance field-tested positive for THC (the active ingredient in marijuana), and (v) Duvall admitted at trial that the substance recovered from his car was marijuana. We discuss the first four factors, then address the fifth. We conclude that the record does not support the government's position that the error was harmless beyond a reasonable doubt.

■ We recognize that in a prosecution for possession of a controlled substance, the government may establish that the substance is an illegal drug by means of circumstantial evidence. *Bernard v. United States,* 575 A.2d 1191, 1192 (D.C.1990). In *Bernard,* we upheld appellant's conviction for distribution of marijuana in face of his contention that, to establish the identity and illicit nature of the substance he sold, the government was required to introduce the drugs themselves in evidence. *Id.* at 1193. We concluded, to the contrary, that circumstantial evidence could— and in that case did—establish the illegal identity of the substance. *Id.* at 1194. We confined our analysis in *Bernard,* however, to the question whether the evidence was sufficient to permit a rational jury to convict Bernard of the drug charges. *Id.* at 1192. Our standard of review in addressing such claims of evidentiary insufficiency—whether, judged in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—differed significantly from the constitutional-harmless-error analysis applicable here. *Timberlake v. United States,* 758 A.2d 978, 981 (D.C.2000) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (discussing evidentiary insufficiency standard of review)); *see Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) (distinguishing between the standards). That distinction becomes clear when we consider two recent cases in which we have reviewed for constitutional harmless error the admission of DEA lab reports in contravention of a criminal defendant's constitutional right of confrontation.

In *Callaham,* we reversed appellant's conviction for possession of cocaine be-

---

**5.** In *Melendez–Diaz,* the Supreme Court "did not reach" the question whether the error in admitting the forensic analyst certificates was harmless. *Melendez–Diaz,* —— U.S. at —— n. 14, 129 S.Ct. 2527. The Court, however, reaffirmed the applicability of traditional harm-

less error analysis. *Id.* ("Today's opinion, while insisting upon retention of the confrontation requirement, in no way alters the type of evidence (including circumstantial evidence) sufficient to sustain a conviction.").

cause the trial court's admission of the DEA–7 without requiring the government to call the chemist to testify was not harmless error. *Callaham*, 937 A.2d at 142. The evidence at Callaham's bench trial showed that an MPD officer had been on the lookout for narcotics activity when he saw Callaham approach an individual and exchange currency for a small object. *Id.* Suspecting that he had just witnessed a drug transaction, the officer broadcast a lookout for Callaham. *Id.* Another officer stopped Callaham and asked her if she had "anything illegal on her." *Id.* Callaham said "yes," handed the officer a "clear zip with a white-rock substance in it," and was arrested. *Id.* at 142–43. The officer field-tested the substance, which tested positive for cocaine. *Id.* at 143. We reversed Callaham's conviction because there was "at the very least a 'reasonable possibility' that the admission of the DEA–7 contributed to" the verdict. *Id.* at 147.[6]

Also, in *Fields*, we reversed appellant's conviction for possession of marijuana because admission of the DEA–7 was not harmless error as to that charge—or even to the lesser included offense of attempted possession (the government's fallback theory). *Fields*, 952 A.2d at 860. The jury heard evidence at Fields' trial that MPD officers had responded to reports of drug activity near Georgia Avenue, N.W., where, upon arrival, they had seen Fields leaning over a vehicle and talking to its occupants. *Id.* As the officers approached, Fields looked in their direction, stood up and started walking away. *Id.* When the officers left their vehicle, Fields started to run. *Id.* During the ensuing chase, Fields jettisoned a firearm. *Id.* During the process of booking and searching Fields at the police station, a "clear

plastic bag with a green weed substance" fell from his pants. *Id.* at 860–61. An MPD officer testified at trial that he field-tested the substance and "it tested positive for THC, which is the active chemical ingredient found in marijuana." *Id.* at 861. Before the officer could finish explaining the field-test to the jury, the trial judge cut him off, reasoning that no further testimony about the field test was necessary because the DEA–7 was available. *Id.* On appeal, the government conceded that admission of the DEA–7 was not harmless error as to Fields' conviction for possession of marijuana, but argued for a ruling of harmless error—and entry of a judgment of conviction—as to the lesser included offense of *attempted* possession. *Id.* at 864. We disagreed with the government's contention, stating that "only the DEA–7 was conclusive evidence that the green weed substance found on appellant was in fact marijuana. Although there was other evidence tending to suggest that the green substance was marijuana, nothing was a persuasive as the official forensic report confirming its chemical identity." *Id.*

The government attempts to distinguish the present case from *Fields* on the ground that the trial court here permitted Officer Hoetzel to testify without limitation about the result of the field test he performed on the substance recovered from Duvall, whereas in *Fields* the court cut off the field-test testimony in favor of reliance on the DEA–7. *Id.* at 861. We acknowledge that in contrast to Duvall's case, the officer's testimony concerning the field test in *Fields* was insufficient to make that evidence adequately reliable for consideration by the jury. *Id.* at 868. The field test in the present case does constitute

---

6. The trial court, in the relevant portion of its findings of fact, observed that the substance recovered from Callaham was " 'tested with a net weight of .07 grams and following testing

what remained was 0[ ].0494 grams, clearly a measurable amount of cocaine. So I find the defendant guilty of possession of cocaine.' " *Callaham*, 937 A.2d at 147.

evidence that the substance recovered from Duvall's vehicle was marijuana, and we consider it in determining whether the evidence against Duvall was overwhelming. But the field test is not dispositive. We reversed appellant's conviction in *Callaham* notwithstanding evidence of a positive field test for cocaine, because "a positive field test, standing alone, [cannot] prove beyond a reasonable doubt that the substance was cocaine." *Callaham*, 937 A.2d at 147 (citing *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939 (D.C.2003)); *see Thomas*, 914 A.2d at 6 (noting that positive field-test reaction signaled only "*probable* presence of cocaine") (emphasis added). Officer Hoetzel's testimony that the bag contained a green weed substance does not distinguish this case from *Callaham* or *Fields* either. In *Fields*, we reversed notwithstanding testimony that the bag found on appellant's person contained a "green weed substance." *Fields*, 952 A.2d at 864. We reversed in *Callaham* despite testimony that appellant purchased a "white-rock substance" in an apparent drug transaction. *Callaham*, 937 A.2d at 143.

The government highlights another distinction between the facts of the present case and those in *Fields* and *Callaham*: Officer Hoetzel's testimony that he detected the odor of marijuana from Duvall's vehicle. We do not discount the significance of the odor testimony as part of the body of circumstantial evidence against Duvall, particularly when it comes from an MPD officer trained to recognize the scent of marijuana. *See Minnick v. United States*, 607 A.2d 519, 525 (D.C.1992) (noting, in context of probable cause to search, that smell of marijuana is as good or better than visual identification of green weed-like substance as indicator of drug). But the claim before us is not one of evidentiary insufficiency. And the fact that Officer Hoetzel smelled marijuana fails to distinguish this case meaningfully from *Callaham*, where the circumstantial evidence of Callaham's possession of an illegal drug was at least as suggestive as in the present case.[7] It follows, therefore, that the circumstantial evidence the government mustered at trial does not impress this court as being "overwhelming."

■ Moreover, DEA lab reports have played a prominent role in drug prosecutions in this jurisdiction generally, and in this case in particular. *See* D.C.Code § 48–905.06 (2001) (prescribing procedure for admitting chemist reports); *Fields*, 952 A.2d at 864, 867 (describing the persuasiveness of the DEA–7). We have remarked that when the government charges a criminal defendant with possession of a controlled substance but fails to introduce a DEA laboratory report, a jury "could well have … a doubt about the government's case if the prosecution did not proffer the type of scientific evidence establishing the identity of the substance that is commonly expected." *Fields*, 952 A.2d at 867. Here, the government sought to prove its case—as we stated in *Fields*—"in

---

7. Unlike Callaham, from whom the police recovered a "white rock substance" in a suspected drug transaction, Duvall did not admit that he possessed an "illegal" substance. *Callaham*, 937 A.2d at 142–43. Further, unlike an apparent street-corner exchange of a substance for money, the illicit nature of the substance in Duvall's car could not be inferred from the surrounding circumstances. *See Fields*, 952 A.2d at 865–66 (noting that evidence of sale in circumstances suggesting drug transaction is relevant to show that substance was cocaine, and that defendant knew it to be cocaine) (citing *Thompson v. United States*, 678 A.2d 24, 27–28 (D.C.1996)). In that sense the present case is quite different from *Williams v. United States*, 966 A.2d 844 (D.C.2009), in which we found the admission, over objection, of a DEA–7 report without the opportunity to cross-examine the preparing chemist harmless as to the lesser-included charge of attempted distribution of a controlled substance, where appellants sold cocaine to an undercover police officer.

the most direct manner, by establishing that the DEA-7 report established that the substance was marijuana," rather than by circumstantial evidence. *Id.* at 866. We note that the prosecutor, in her closing statement, as well as the trial judge, in his findings of fact, each made specific reference to information contained in the DEA-7: the amount of the substance recovered and data showing that the substance was indeed marijuana.[8] *See Callaham,* 937

A.2d at 147 (noting that trial judge referenced DEA-7 in findings of fact). The central role the DEA-7 played at trial supports our conclusion that the government has not met its burden of showing that Duvall's conviction was "surely unattributable" to the erroneously admitted evidence. *See Fields,* 952 A.2d at 866 (citing *Sullivan,* 508 U.S. at 279, 113 S.Ct. 2078).[9]

■ The government also asks us to consider Duvall's own testimony, which it

---

8. The prosecutor, having explained why the evidence showed that Duvall had constructively possessed the green weed substance, concluded her closing statement as follows: "Therefore, Your Honor the—and it's a measurable amount, as demonstrated by the DEA analysis, and it is indeed marijuana." The trial court entered its judgment on the record in the following manner: "So I would find, applying the logical inference here in crediting Officer Hoetzel's testimony, that the defendant was knowingly in possession of the *measurable amount of marijuana* that was found in the car, and thus he is guilty of possession of marijuana." (Emphasis added.) Although the court in the cited passage might have been referring to the heat seal (which contained the marijuana), it just as easily could have been referring to the DEA-7. This ambiguity supports our conclusion that the government has not met its burden of dispelling any reasonable possibility that the chemist's report contributed to Duvall's conviction.

9. Those cases in which we have reviewed a Confrontation Clause violation for plain error also inform our analysis. In *Otts v. United States,* 952 A.2d 156 (D.C.2008), and *Thomas,* 914 A.2d 1, we concluded that the introduction of a DEA-7 report in violation of *Crawford,* 541 U.S. 36, 124 S.Ct. 1354, satisfied the third of the four-prong plain-error test because the error affected the appellant's "substantial rights." *Otts,* 952 A.2d at 161 (citing *United States v. Dominguez Benitez,* 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)); *Thomas,* 914 A.2d at 21–22. The evidence at Otts' trial showed that: (i) the police arrested him in a purported-drug transaction, (ii) officers observed him place an object in his mouth, (iii) he spit out a zip-lock bag containing a white residue, which (iv) field-tested positive for heroin. *Otts,* 952

A.2d. at 160. We concluded that the erroneous introduction of the DEA-7 affected Otts' "substantial rights" because "there was a reasonable probability that the Confrontation Clause violation had a prejudicial effect on the outcome of his trial." *Id.* at 161. We reached the same conclusion in *Thomas,* because the "DEA chemist's report was the main, if indeed not the only, proof offered by the prosecution" that the substance was a controlled one. 914 A.2d at 22. In *Thomas,* appellant was arrested after (i) selling a white, rocky substance to an undercover police officer, (ii) which field-tested positive for cocaine, (iii) having fled from the police, and (iv) having been found hiding under a car. *Id.* at 6.

For an error to have affected an appellant's "substantial rights," a court must find that it had a "substantial and injurious effect or influence in determining the ... verdict." *Dominguez Benitez,* 542 U.S. at 81, 124 S.Ct. 2333 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Unlike our review for constitutional error here, in which the government must show the error to be harmless beyond a reasonable doubt, the *appellant* bears the burden under plain-error review to show that the alleged error affected his substantial rights. *See United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that appellant bears burden of showing impact on substantial rights under plain error test). That the appellants in *Otts* and *Thomas,* despite considerable circumstantial evidence suggesting they possessed controlled substances, showed that a Confrontation Clause violation from an erroneously admitted DEA-7 affected their substantial rights only confirms our conclusion that the government has not discharged its burden here.

contends, although falling short of a "full confession," contained an admission that the substance recovered from his car was marijuana. The record shows that in response to questioning from his attorney concerning the circumstances of his arrest, Duvall replied that after the officers placed him in handcuffs they brought him to the front of the car and "reached underneath ... [the] floor mat and pulled out a bag of marijuana." Duvall, however, testified that he had told the officers he had never seen the marijuana before his arrest.[10] Because Duvall consistently denied knowledge of the marijuana prior to the search, his testimony was plainly not an admission that the substance was marijuana.

The government also notes that Duvall's trial counsel made repeated references to "marijuana" in his closing argument. However, in this case, the trial judge had admitted the DEA–7 over objection, and realistically, the defense was in no position to argue that the contraband was not marijuana. Under these circumstances counsel's reference to the substance as marijuana, as part of his trial strategy contesting the possession element of the offense, cannot reasonably be considered an admission.

In sum, we conclude that the government has not eliminated the "reasonable possibility" that the DEA–7 contributed to Duvall's conviction. *Callaham,* 937 A.2d at 147. Indeed, the record points to the opposite conclusion. Under these circumstances, Duvall's conviction must be re-versed and the case remanded for a new trial.

*Reversed and remanded.*

---

**10.** Duvall denied telling the officers that he had forgotten about the bag, as was Officer Hoetzel's testimony. Nor was Duvall's statement to the officers that "if there's any possibility of it being mine, it had to have been in there for months and months and months" an affirmative admission that the substance was marijuana. Duvall's statements regarding the bag are, in any event, relevant only to the element of possession and not to the element of whether the substance was a controlled substance. *Fields,* 952 A.2d at 868 (noting that testimony that police found appellant with green weed substance in holding cell could corroborate evidence that he possessed the substance, but not that it was in fact marijuana).