599 A.2d 1165

**George E. SATTERFIELD, Jr.**

v.

**STATE of Maryland.**

**No. 37, Sept. Term, 1991.**

Court of Appeals of Maryland.

Jan. 8, 1992.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

On June 7, 1989, Baltimore City Police Officer Stanley Nolan was making a purchase at a 7–11 store in Anne Arundel County. As Nolan returned to his truck, he saw a man, who was later identified as George E. Satterfield, Jr., getting into the front passenger seat of a car parked next to his truck. Nolan, an experienced narcotics officer, noticed "a very strong odor of PCP" when the car door was opened.

Immediately after the car left the 7–11 parking lot heading north on Point Pleasant Road, an Anne Arundel County police cruiser driven by Officer James Teare pulled into the lot. Nolan told Teare that a tan Monte Carlo, occupied by three white males, had just left the parking lot. Nolan further told Teare that, based upon the strong smell of PCP

coming from the car, he believed that a sizeable quantity of freshly shaken or applied liquid PCP could be found in the Monte Carlo.

Officer Teare testified that he knew Officer Nolan and was aware of his expertise in the field of narcotics. Officer Teare, accompanied by Officer Nolan, drove one mile north on Point Pleasant Road before spotting the Monte Carlo parked outside the Double Eagle Saloon. The two officers arrived just as Satterfield and the two other men were walking to the door of the bar. Officer Nolan confirmed that both the car and the individuals were those that he had seen in the 7–11 parking lot. In response to Teare's call for back-up, Anne Arundel County Police Officers Athena Blake and Max Weinstein joined the surveillance effort at the Double Eagle Saloon.

After roughly half an hour, the same three white males emerged from the Double Eagle Saloon and headed toward the tan Monte Carlo. Satterfield went to the trunk of the car, removed a white plastic bag, and then got into the front passenger seat of the car. A man later identified as Russell Michael got into the driver's seat, and a man named Ronald Aiken got into the back seat. The car then left the parking lot and proceeded less than half a mile before Officer Blake, in a marked car, stopped the Monte Carlo for driving on the wrong side of the road. Officers Teare and Blake each testified that, as they approached the car, they smelled the strong odor of PCP coming from it.

Behind the driver's seat of the Monte Carlo, Officer Blake found a white plastic bag containing a glass jar, a bag of green vegetable material, sandwich baggies, a hypodermic syringe, and a 35mm film canister. The green vegetable material was determined by a police chemist to be 32.43 grams of parsley flakes laced with PCP. From Satterfield's pockets, Officer Weinstein recovered a list of names and monetary amounts, E–Z Wider rolling papers, and "bunched" paper currency amounting to $145.

Satterfield was convicted in the Circuit Court for Anne Arundel County of possession with intent to distribute phencyclidine (PCP) and of two counts of possession of paraphernalia. On April 7, 1990, he was sentenced to seven years imprisonment for possession with intent to distribute PCP, a consecutive two-year term for possession of a hypodermic syringe, and another consecutive two-year term for possession of plastic baggies. The Court of Special Appeals, in an unreported opinion, affirmed Satterfield's convictions and sentences. We granted Satterfield's petition for certiorari to determine whether Satterfield could be convicted of and sentenced on two separate counts of possession of paraphernalia. For the reasons set forth below, we believe Satterfield may be properly convicted of only a single count of possession of paraphernalia.

Satterfield was charged with and convicted of possessing the hypodermic syringe and the plastic baggies, each in violation of Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 287(d).[1] Defense counsel explained at oral argument

---

1. Maryland Code (1957, 1987 Repl Vol.), Article 27, § 287 provides in pertinent part:

"... it is unlawful for any person:

(d) To possess or distribute controlled paraphernalia, which shall mean:

(1) A hypodermic syringe, needle or other instrument or implement or combination thereof adapted for the administration of controlled dangerous substances by hypodermic injections under circumstances which reasonably indicate an intention to use such controlled paraphernalia for purposes of illegally administering any controlled dangerous substance;

(2) Gelatin capsules, glassine envelopes or any other container suitable for the packaging of individual quantities of controlled dangerous substances in sufficient quantity to and under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any such controlled dangerous substance. Evidence of such circumstances shall include but not be limited to close proximity of any such controlled paraphernalia to any adulterants or equipment commonly used in the illegal manufacture and distribution of controlled dangerous substances, such as but not limited to any of the following: scales, sieves, strainers, measuring spoons, staples and staplers, or procaine hydrochloride, mannitol, lactose, quinine or any controlled dangerous substance; or

that the hypodermic syringe, which was found in the plastic bag among the other items, was used to "spray" the parsley with liquid PCP. Defense counsel referred to this Court's explanation in *State v. Owens*, 320 Md. 682, 687, 579 A.2d 766, 768 (1990), that a substance which is "laced" with PCP is usually "dipped into, or sprayed with, PCP." The Assistant Attorney General representing the State seemed to agree:

> THE COURT: You are satisfied that the hypodermic was used in conjunction with mixing the PCP with parsley?
>
> THE STATE: I would think so. There was, as the Court has eluded, very little evidence provided during trial as to the exact use in this particular instance, but given the context in which it was found—
>
> THE COURT: But given the context? How in the world do you use a hypodermic syringe in this process?
>
> THE STATE: Well I think it was discussed earlier; the idea of using the hypodermic syringe for the PCP to spray it on the parsley leaves....

After the parsley was sprayed, the baggies would then be used to package the PCP-laced parsley for sale. Thus, the parties agreed that it was a reasonable inference from the evidence that both items of paraphernalia were used in conjunction with the preparation and sale of the PCP-laced parsley. As there was no evidence to indicate that the hypodermic syringe was used for purposes of injection, the count charging possession of the syringe does not fall within § 287(d)(1). Rather, the syringe here was used to

---

(3) Lactose, quinine, mannite, mannitol, dextrose, sucrose, procaine hydrochloride or any other substance suitable as a diluent or adulterant in sufficient quantity and under such circumstances which reasonably indicate an intention to use any such substance for the illegal manufacture, distribution or dispensing of any controlled substance. Evidence of such circumstances shall include but not be limited to close proximity of any such controlled paraphernalia to any other adulterants, diluents or equipment commonly used in the illegal manufacture and distribution of controlled substances, such as but not limited to any of the following: scales, sieves, strainers, measuring spoons, staples and staplers, glassine envelopes, gelatin capsules, or any controlled substance."

contain and spray the liquid PCP; therefore, it more appropriately falls within the proscription of § 287(d)(2). The baggies clearly fall within that same section's interdiction.

Because both counts were charged under a single statute, the task before the Court is to determine what the legislature intended to be the appropriate unit of prosecution. *Owens*, 320 Md. at 686, 579 A.2d at 767. Divining the intent of the legislature is not always a simple task. "As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme Court's admonition that we give the language of a statute a 'commonsensical meaning.' " *Randall Book Corp. v. State*, 316 Md. 315, 324, 558 A.2d 715, 720 (1989) (quoting *United States v. Universal Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952)).

The State argues that the legislature, in an attempt to "turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter,"[2] intended that each different item of paraphernalia be punished separately. The State cites *Cunningham v. State*, 318 Md. 182, 567 A.2d 126 (1989) to support its contention. In *Cunningham*, this Court allowed separate punishment for convictions of one count of possessing cocaine and one count of possessing heroin where the defendant simultaneously possessed separate quantities of each drug in the same bag. In permitting punishment for each of the two convictions, we held that "the legislature intended to make each controlled dangerous substance an allowable unit of prosecution...." *Id.* at 192–94, 567 A.2d at 131. The State argues that this same analysis applies with equal force in the instant case: "Satterfield was found in simultaneous pos-

---

**2.** In *Cunningham v. State*, 318 Md. 182, 189, 567 A.2d 126, 129 (1989) we quoted this language originally from *Gore v. United States*, 357 U.S. 386, 390, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405, 1409 (1958), which we believe reflected the prevailing mood of the Maryland General Assembly with respect to illegal drug activity.

session of a syringe and glassine baggies contained separately within a large bag. It follows rationally that if § 287 authorizes separate convictions and punishments for each substance covered by the statute, it must also permit separate convictions and punishments for each item of paraphernalia possessed."

While this is one possible manner to apply the intent of the legislature as identified in *Cunningham*, we believe that another, perhaps more "commonsensical," application exists. The Court in *Cunningham* clearly identified that a unit of prosecution is permitted for each controlled dangerous substance. This principle explains the contrast between the holdings of *Cunningham* and *Owens*. In *Cunningham* this Court upheld two convictions for the simultaneous possession of cocaine and heroin. Whereas in *Owens* we held:

> "Taking a common sense view of the matter, we are simply not persuaded that the legislature intended separate prosecutions and punishments for possession of PCP and possession of marihuana where the two substances have been, for all practical purposes, irrevocably joined as one."

*Id.* at 688, 579 A.2d at 768. Because the PCP-laced marihuana in *Owens* was determined to be a single controlled dangerous substance, the Court held that only one conviction for its distribution could stand. In each of these cases, the legislature's intention to allow a unit of prosecution per controlled dangerous substance impelled the result.

Further, we believe it clear that the legislature did not seek to proscribe the use of items identified as paraphernalia (such as sandwich baggies) in and of themselves. Rather these items, which may have common innocent uses, are punishable only under circumstances indicating an intent to use them in conjunction with a controlled dangerous substance. This requisite connection is evidenced by the language of § 287(d)(2), which makes it unlawful to possess

the enumerated items of paraphernalia[3] "under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any controlled dangerous substance." Consequently, we believe that it is at least equally plausible that the legislature intended for the controlled dangerous substance to dictate the unit of prosecution in charges for paraphernalia as well. Since both the State and defense counsel agree that the syringe and the plastic baggies were used to prepare the PCP-laced parsley for sale, there is no dispute that both items of paraphernalia were used in conjunction with a single controlled dangerous substance. Under this analysis, it would seem that the legislature intended but one unit of prosecution.

We cannot say with certainty what the legislature intended. As we have held before:

> "When the legislative intent can be gathered from the various sources to which we have referred, that intent will be enforced, and the concept of lenity does not become an operable factor. If, however, the legislative intent cannot be determined, and the indicia point with equal force in opposite directions, the rule of lenity dictates that the matter be resolved in favor of the accused and against the possibility of multiple punishments."

*Cunningham*, 318 Md. at 185–86, 567 A.2d at 127–28 (quoting *Randall Book*, 316 Md. at 327, 558 A.2d at 721). We recognize the rule of lenity as a rule of statutory construction and believe that in this case it tips the balance in favor of the accused. Consequently, we find that Satterfield's separate convictions for two items of paraphernalia, each used in conjunction with the same controlled dangerous substance, cannot stand. We believe that the items of

---

**3.** We note that the word "paraphernalia," as defined by this Court in *Dickerson v. State*, 324 Md. 163, 168 n. 3, 596 A.2d 648, 650 n. 3 (1991), is plural. Had the legislature intended the prosecution of each "item of" paraphernalia specified in the statute, it could have said precisely that.

paraphernalia in this case were capable of supporting only one count of possession of paraphernalia under § 287(d).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE CONVICTION FOR POSSESSION WITH INTENT TO DISTRIBUTE PCP AND ONE CONVICTION FOR POSSESSION OF PARAPHERNALIA, AND TO VACATE ONE CONVICTION FOR POSSESSION OF PARAPHERNALIA; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.

Dissenting opinion by McAULIFFE, J., in which RODOWSKY and KARWACKI, JJ., join.

McAULIFFE, Judge, dissenting.

The Court holds today that a defendant may not be charged with more than one offense under Article 27, § 287(d)(2) for possession of multiple items of drug paraphernalia so long as those items are used in conjunction with the manufacture, distribution, possession, or administration of the same controlled dangerous substance. The majority concedes that this interpretation is not clearly intended by the legislature but only that "it is at least [as] equally plausible" as an interpretation allowing for multiple convictions for possession of multiple items of paraphernalia, and that the rule of lenity tips the balance toward the interpretation favoring the accused. Because I agree with the Court of Special Appeals that the legislature intended to allow more than one unit of prosecution for possession of different kinds of paraphernalia when used in conjunction with the same illicit drug, I dissent.

As this Court has previously recognized, the legislature has intended in some instances to allow multiple convictions and sentences for the simultaneous possession of items made unlawful under the same statutory provision. *Cunningham v. State,* 318 Md. 182, 567 A.2d 126 (1989) (simul-

taneous possession of heroin and cocaine justified separate convictions and sentences); *Randall Book Corp. v. State*, 316 Md. 315, 558 A.2d 715 (1989) (simultaneous display for sale of 116 different pornographic magazines supported 116 convictions and sentences).

We have said that to determine what the legislature intended as the appropriate unit of prosecution, we must look at the plain meaning of the words of the statute in light of "the general history and prevailing mood of the legislative body with respect to the type of criminal conduct involved." *Cunningham, supra,* 318 Md. at 185, 567 A.2d 126, quoting *Randall Book, supra,* 316 Md. at 327, 558 A.2d 715. In both of these cases, we inferred the intent to allow multiple units of prosecution not from specific statutory language authorizing them but from the history of the statutes and a more general analysis of the statutory language.

The grounds we found in those cases to support allowing multiple units of prosecution are equally present in this case. First, in terms of the general legislative history of Section 287, the Section is part of the same legislative act, the Maryland Controlled Dangerous Substances Act, that was at issue in *Cunningham.* When we held in *Cunningham* that two convictions were proper for simultaneous possession of two drugs, we emphasized that the provisions of the Act were intended to be liberally construed and that

we believe the prevailing mood of the Maryland General Assembly with respect to illegal drug activity is identical with that earlier attributed to Congress by the Supreme Court.

[T]he history of the narcotics legislation in this "country reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter."

*Cunningham, supra,* 318 Md. at 189, 567 A.2d 126 (citations omitted). The majority does not suggest, and I find no indication in the Act, that Section 287 was intended to be treated differently from other provisions of the Act.

Second, in terms of interpreting the plain meaning of Section 287(d)(2), its language is similar to that found in the statute construed in *Randall Book* permitting a conviction for each separate pornographic magazine displayed for sale. In *Randall Book* we noted that the specificity of the statute contributed to the interpretation that multiple units of prosecution were intended:

In the case before us, the statute proscribes the knowing display for advertising purposes of '[a]ny picture, photograph, drawing, sculpture or other visual representation or image of a person or portion of the human body that depicts sadomasochistic abuse, sexual conduct or sexual excitement, or any verbal description or narrative account of these activities or items.' Art. 27, § 416D(a). It seems apparent that the legislature specifically intended to establish a small unit of prosecution.

*Randall Book Corp., supra,* 316 Md. at 327, 558 A.2d 715. Section 287(d)(2) similarly lists with specificity the different items that constitute paraphernalia and the different uses which make the paraphernalia unlawful to possess. Thus, as in *Randall,* it can be inferred that multiple units of prosecution were intended for possession of different types of paraphernalia.

The majority does not contest that multiple convictions would be allowed if each item of paraphernalia involved in this case were used in conjunction with a different illicit drug. They state, however, that only one unit of prosecution is permissible when the different paraphernalia are possessed for the use of the same drug. To support this distinction, the majority relies on *State v. Owens,* 320 Md. 682, 579 A.2d 766 (1990), in which we held that the simultaneous possession of marijuana and PCP are not separate offenses if the two substances are for all practical purposes irrevocably joined as one.

Reliance on *Owens* is misplaced because, in contrast to that case, here the two items of paraphernalia possessed by Petitioner were not irrevocably joined as one. In *Owens,* we specifically relied on the fact that the two substances

were mechanically bound together "in a way that renders it impossible, in any practical sense, to separate them." *Id.* at 687, 579 A.2d 766. Here, however there are two different types of paraphernalia possessed for two different purposes. The syringe was used in the manufacture of the PCP product to spray the parsley flakes, while the baggies were used as a means of packaging and distributing the sprayed flakes. The items were thus distinct and intended for different purposes. As the Court of Special Appeals held, "this is an instance where the possession of each item is simultaneous, yet they are entirely separate, and thus the possession of each clearly constitutes a separate offense."

The majority's holding produces the odd result that if Petitioner had been found to possess a whole laboratory of equipment and supplies for the manufacture, packaging, and distribution of PCP, only one unit of prosecution would be permissible under Section 287. I do not believe that the Legislature intended such a result when it enacted the Maryland Controlled Dangerous Substances Act. I would affirm the judgment of the Court of Special Appeals.

Judges RODOWSKY and KARWACKI have authorized me to state that they join in the views expressed herein.