**Karen N. THOMPSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 93–CF–1559.

District of Columbia Court of Appeals.

Submitted March 10, 1995.
Decided June 20, 1996.

---

Alan L. Balaran, Washington, DC, appointed by the court, was on the brief for appellant. Lillian A. McEwen, Washington, DC, also appointed by the court, entered an appearance for appellant.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Erik P. Christian, and Judson E. Lobdell, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, FARRELL, and RUIZ, Associate Judges.

TERRY, Associate Judge:

Appellant Thompson was convicted of attempted distribution of cocaine, in violation of D.C.Code §§ 33–541(a)(1) and 33–549 (1993). On appeal her only contention is that the evidence was insufficient to prove the crime of which she was convicted. We affirm.[1]

I

In the early morning hours of May 14, 1992, Karen Thompson, Carolyn Locks, and Diane Locks were watching television in the Locks family home in Northeast Washington. At about 1:30 a.m. Thompson said she wanted to go out for a walk and asked Carolyn Locks to go with her. Locks testified that the two of them left the house and walked to the corner of Fifteenth and G Streets. There they saw Leon Holt and "a guy named Mark" leaning against a car on the opposite side of the street. While Locks stayed where she was, Thompson crossed the street to the other side, where Holt handed her a package.[2] Ms. Locks, who had been a habitual user of crack cocaine for seven or eight years, testified that the package contained cocaine. When the prosecutor asked her how she could recognize the contents of the package as cocaine, she replied, "Because I know what it looks like."

At about the same time, Lewis McClain drove up in a van and parked a short distance away. McClain got out of the van and came over to where Carolyn Locks was standing. After the two of them spoke briefly, Ms. Locks started to go back toward her own house. Just then Karen Thompson came back across the street toward McClain, and the two of them walked down the street behind Locks. As they were walking, Thompson handed McClain one of the smaller bags that she was holding in her

---

1. Thompson and a co-defendant, Leon Holt, were also charged with felony murder while armed, and Holt was charged additionally with other crimes. Holt and Thompson were tried together. The jury found Holt guilty of felony murder while armed, as well as attempted distribution of cocaine and two weapons offenses, but as to Thompson it deadlocked on the murder charge, and eventually that count of the indict-

ment against her was dismissed. Holt's appeal from his several convictions is separately pending before this court in No. 93–CF–1410.

2. Later testimony established that this package was actually a "bundle" containing several small plastic bags. See note 4, *infra*.

hand. McClain looked at it, said "This [stuff] is not real," and demanded his money back. Thompson and McClain then began "tussling with one another." Locks testified:

> It [the small bag] was in her hand. They were struggling. She passed him one, he looked at it and he said it wasn't real. So that's when they started struggling because he wanted his money back.

The two of them wrestled with each other for a few moments, and then McClain started to run across the street. The man named Mark intercepted him and blocked his path while Thompson called out to Holt, who also ran toward McClain. As McClain tried to flee, Holt pulled out a pistol and shot him in the back. McClain fell to the pavement and, after a few minutes, bled to death.

Meanwhile, Thompson and Locks ran to Thompson's house by a circuitous route, across two parking lots and "through the Pinnacles."[3] Locks testified that after they arrived, Thompson took the bundle of smaller packages[4] out of her pocket and "started counting." What happened to the bundle after that is not clear from the record. What is clear, however, is that Thompson and Holt were not arrested until several months later, and that the packets were never recovered.

The government also presented the expert testimony of Detective Charles Culver, who described the roles of "holders" and "runners" in the sale of drugs on the street:

> A holder is an individual ... who's designated to hold the narcotics.... Usually he's the one in charge. He has control of the narcotics and usually has control of the money. He's the main one out there. Then you have the runner. This individual is designated to solicit potential customers coming into the area.

According to Culver, the runner stays close to the holder, usually within the same block, so that the holder can "keep an eye on his money or product." When asked how the holder provides drugs to the runner, Culver replied:

> If the holder is also [the person] in charge, if he's the main man, he might give [the runner] what they call a ten-pack, ten packages of ... heroin or cocaine at a time to sell.... [T]hat individual sells this ten-pack and returns back to the holder and receives ten more to sell.

In response to a hypothetical question based on the evidence already before the jury, Culver testified that a person in Thompson's position "is a runner or lieutenant. That's the person who's out there selling drugs." The individual from whom this runner receives a supply—the one in Holt's position—"is the holder."

Holt called one witness whose testimony, in substance, was that someone else had been the shooter. Thompson presented no evidence.

## II

■ To prove that appellant attempted to distribute cocaine, the government was required to prove that she "had the intent to commit the crime and that [she] performed some act toward its commission." *Blackledge v. United States*, 447 A.2d 46, 49 (D.C. 1982) (citation omitted); *see Wormsley v. United States*, 526 A.2d 1373, 1375 (D.C. 1987). Appellant contends that the evidence was insufficient to establish that she intended to distribute cocaine because it did not show that she believed the substance in the small package was in fact cocaine. *See United States v. Everett*, 700 F.2d 900, 908 (3d Cir. 1983) (government must prove that defendant "believed that the substance he distributed was [a controlled substance]"). She observes that no drugs were recovered and no money changed hands,[5] that she made no mention of any intent to distribute cocaine, and that there was no evidence of any prior sale of cocaine or any other illegal drug.

---

3. "The Pinnacles" are not further identified.

4. After the tussling ended, Locks saw a single "package" in McClain's hand and a larger package containing several smaller packages in Thompson's hand. "He had one, she [had] a bundle."

5. Although Carolyn Locks testified that McClain insisted on getting his money back, Locks did not actually see any exchange of money.

Most significantly, she notes that Mr. McClain complained that what he received from her was "not real," suggesting that what this statement showed was an attempt to deceive McClain by selling him a counterfeit substance, not an attempt to distribute cocaine.

■ We reject this contention because the government was not required to prove that the substance actually was cocaine in order to establish appellant's guilt of attempted distribution. In *Seeney v. United States,* 563 A.2d 1081 (D.C.1989), *cert. denied,* 498 U.S. 858, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990), this court affirmed a conviction of attempted possession of phencyclidine with intent to distribute it (PWID). Rejecting an argument that the government had failed to prove by expert testimony that the substance was in fact phencyclidine, we held:

It is undisputed that in order to prove the *completed* crime of illegal possession of a specified controlled substance, the government must prove that the substance possessed was, in fact, the controlled substance in question. . . . However, there is no such requirement when the charge is an attempt. . . .

. . . With respect to the offense of *attempted* possession with intent to distribute . . . we hold that it is not necessary to establish that the substance a defendant attempted to possess was the proscribed substance.

*Id.* at 1083 (citations omitted; emphasis in original). We now hold that this rule, applied in *Seeney* to attempted PWID, is equally applicable to a case involving attempted distribution, such as the one before us. In an attempt case involving a purported illegal drug, what *Seeney* teaches is that the government is not required to prove the identity of the substance in question,[6] but rather "conduct by the defendant that is reasonably adapted to the accomplishment of the crime of [distribution] and the requisite criminal intent." *Seeney,* 563 A.2d at 1083. This is no different from what must be proved in

any case in which the defendant is charged with an attempt to commit a crime: an "intent to commit the crime" and the performance of "some act toward its commission." *Blackledge, supra,* 447 A.2d at 49.

We added a cautionary note in *Seeney:*

Where a defendant's acts are of themselves commonplace or equivocal, and are as consistent with innocent activity as they are with criminal, it will be necessary for the government to adduce objective facts to establish criminal intent.

563 A.2d at 1083–1084 (footnote omitted). We agree with the government that this caveat does not apply here because appellant's acts were not "as consistent with innocent activity as they [were] with criminal." On the contrary, appellant's acts showed actual distribution of what purported to be cocaine, and thus they necessarily showed an attempted distribution of whatever the substance was. *See Ray v. United States,* 575 A.2d 1196, 1199 (D.C.1990) ("Every completed criminal offense necessarily includes an attempt to commit that offense"); *United States v. Fleming,* 215 A.2d 839, 841–842 (D.C.1966) (proof that defendant committed a crime is sufficient to support conviction of attempt to commit that crime). Thus all that the government had to prove here, in addition to appellant's conduct, was her intent to distribute cocaine. This was amply established by the surrounding circumstances, as well as the expert testimony of Detective Culver. *See Bowman v. United States,* 652 A.2d 64, 67 (D.C.1994) (intent to commit a crime "is rarely capable of direct proof" and must usually be shown by circumstantial evidence).

■ Appellant's own acts on the night in question plainly manifested her intent to distribute a controlled substance. From Leon Holt she received a bundle of small packets, each containing what appeared to be cocaine (and what Carolyn Locks recognized as cocaine). Moments later she handed one of those packets, apparently taken from the larger bundle, to Lewis McClain, and when

---

**6.** As *Seeney* makes clear, the rule is different when the crime charged is actual distribution or possession with intent to distribute. *See Hill v. United States,* 541 A.2d 1285, 1288 (D.C.1988) (identification testimony of a single eyewitness is sufficient to sustain a conviction of distributing a controlled substance, "coupled, of course, with other evidence identifying the substance itself").

he complained that it was "not real," she began to fight with him and called out to Holt for help. After McClain was shot, appellant went with Locks to her own home, where she immediately took the bundle out of her pocket and started counting its contents. This evidence was sufficient in itself to establish appellant's intent to distribute whatever was in the packets, since it tended to show that she knew it was cocaine. In addition, Detective Culver, testifying as an expert, described the roles of runner and holder in the drug-selling business. From his testimony the jury could readily and reasonably infer that appellant was the runner in this particular drug-selling operation. Finally, Carolyn Locks, who was admittedly quite familiar with cocaine from having used it regularly for several years, testified that she recognized the cocaine on the night of the shooting "because I know what it looks like." This was additional circumstantial proof[7] that appellant intended to distribute cocaine. *See United States v. Walters*, 904 F.2d 765, 770 (1st Cir.1990).

We hold that the evidence before the jury was sufficient to prove appellant's intent to commit the crime which she was convicted of attempting to commit. That conviction is accordingly

*Affirmed.*

---

**7.** Under our case law, the identity of a controlled substance may be proved by circumstantial evidence. *See Bernard v. United States*, 575 A.2d 1191, 1193–1194 (D.C.1990).