**Thomas J. FIELDS, Appellant,**

v.

**UNITED STATES of America,
Appellee.[1]**

No. 06–CF–894.

District of Columbia Court of Appeals.

Argued Sept. 28, 2007.
Decided April 10, 2008.

Andrea Roth, with whom James Klein, Samia Fam, and Richard Greenlee, Public Defenders, were on the brief, for appellant.

Lisa H. Schertler, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, Elizabeth Trosman, and Sharad S. Khandelwal, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL, RUIZ, and BLACKBURNE–RIGSBY, Associate Judges.

RUIZ, Associate Judge:

Appellant appeals from a jury conviction

---

1. This appeal was initially consolidated with *Lathan v. United States,* No. 05–CM–1398. Both appeals were stayed by the court *sua sponte* pending decision of *Thomas v. United States,* 914 A.2d 1 (D.C.2006). *Lathan* was later dismissed pursuant to the government's unopposed motion to vacate Lathan's conviction.

of possession of marijuana.[2] *See* D.C.Code § 48–904.01(d) (2001). The parties agree that the "DEA–7," a report prepared by the Drug Enforcement Administration, which determined that the green weed substance found on and near appellant was marijuana, was erroneously admitted into evidence in violation of appellant's constitutional right to confrontation. *See Howard v. United States*, 929 A.2d 839, 847 (D.C.2007); *Thomas*, 914 A.2d at 5.

The parties disagree as to the appropriate remedy. The government argues that the case should be remanded with instructions to the trial court to vacate the conviction of possession and enter a conviction for the lesser-included offense of attempted possession of marijuana. *See Mitchell v. United States*, 595 A.2d 1010, 1012 n. 3 (D.C.1991) ("[A]ttempted possession is ... a lesser-included offense of simple possession."). Appellant counters that he is entitled to reversal and a new trial because the admission of the DEA–7 is not harmless error even as to the lesser-included offense of attempted possession. We agree with appellant and reverse and remand the case for a new trial.

## I.

Officer John Bolden of the Metropolitan Police Department testified that in the evening of February 11, 2005, he was on patrol in an unmarked police cruiser as part of the Third District Focus Mission Unit,[3] along with Officers Bret Brown and Christopher Petz. Around 7:35 p.m., the officers received over the radio a complaint of drug activity near Georgia Avenue and Hobart Street, in Northwest Washington. As the officers pulled into the area, Officer Bolden saw appellant leaning over a burgundy car and talking to the people inside the car. Appellant appeared to look in the direction of the officers, stood straight up, and walked away from the car toward the officers. As Officers Bolden and Brown alighted from the cruiser, appellant started to run. The officers gave chase.

As they were running, Officer Bolden saw appellant clenching something in his right hand. He then heard a "metal sound" as appellant threw a "dark item" over a privacy fence. A short while later, Officer Bolden discovered a gun in the yard behind the fence.

Officer Petz followed in the cruiser and arrested appellant. The officer testified that he saw appellant being searched within a few minutes of the arrest, before he was placed in a car. The police did not discover anything despite appellant being "searched thoroughly from head to toe."

Officer Bolden processed appellant at the police station house. Appellant told Officer Bolden that his name was Gregory Jackson. As the officer was removing loose property from appellant-which the officer described as "his belt, shoelace[s], the contents of his pockets, [and] things of that nature ...."—a "green weed substance" fell out from the "crotch area of [appellant's] pants."[4] Officer Bolden also

---

**2.** Appellant was indicted on four counts: (1) Carrying a Pistol Without License, D.C.Code § 22–4504(a) (2001); (2) Possession of Unregistered Firearm, D.C.Code § 7–2502.01; (3) Unlawful Possession of Ammunition, D.C.Code § 7–2506.01; and (4) Unlawful Possession of a Controlled Substance (Marijuana), D.C.Code § 48–904.01(d). The jury acquitted appellant of all but the drug charge.

Appellant was sentenced to 180 days in prison with credit for time served.

**3.** Officer Bolden testified that the "specialized unit" primarily focused on "drug enforcement."

**4.** The prosecutor argued in closing that there was "testimony [that the police] were unzipping his crotch .... [a]nd that's when the

saw "a clear plastic bag with a green weed substance underneath the bench" in the holding cell where appellant had been placed. Appellant was the only person in the cell at the time.

At Officer Bolden's request, Officer Ralph Davis—who had been processing another person—took photographs of the green weed substance located "maybe a foot" from appellant,[5] and of the plastic bag containing a green weed substance, three to four feet away. Separate photographs of appellant standing inside the cell block, of the green weed on the ground, and of the plastic bag underneath the bench in the holding cell were admitted into evidence.

Officer Davis testified that "[he] conducted a field test on the green weed substance [found in the cell block], and it tested positive for THC, which is the active chemical ingredient found in marijuana." As the officer began to explain the field test to the jury, the trial court cut short his testimony saying, "Okay. I think we can dispense with this part of the testimony since we have the DEA–7, so we don't need to talk about the preliminary field test."

The green weed substance, which had been placed in a heat-sealed envelope, was admitted into evidence. The DEA–7 report, which showed that the green weed substance contained a measurable amount of marijuana, was admitted into evidence over appellant's objection that it violated his Sixth Amendment right to Confrontation.

## II.

Following the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held in *Thomas* and reaffirmed in *Howard* that a drug analysis report—the DEA–7— is "testimonial" evidence, and that admission of the report into evidence without the presence of the chemist who prepared it violates the defendant's constitutional right to confrontation unless the defendant validly waives the chemist's presence at trial. *See Howard*, 929 A.2d at 841; *Thomas*, 914 A.2d at 5, 19.[6]

Because the erroneous admission of the lab report implicates constitutional rights, reversal will be required unless the court is "able to declare a belief that [the constitutional error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (noting cases applying harmless error review to violations of Confrontation Clause and applying same review where trial court significantly cur-

weed-like substance [fell] out...." But there was no testimony of such account:

Prosecutor: Okay. Specifically, in terms of the search, exactly how did you uncover the green weed substance that fell from [appellant's] pants?

Officer Bolden: During the removal of his belt and the continuous search of his person, that was the first time I physically had a chance to search.

5. After the green weed substance was found in appellant's holding cell, Officer Davis filled out a report (PD–95) in which he indicated that the substance was found on appellant's

"person." Officer Davis testified, however, that he did not see the substance on appellant, but filled out the report based on information provided by Officer Bolden.

6. On March 17, 2008 the Supreme Court granted certiorari to decide "[w]hether a state forensic analyst's laboratory report prepared for use in a criminal prosecution is 'testimonial' evidence subject to the demands of the Confrontation Clause as set forth in *Crawford v. Washington* ...." Petition for Writ of Certiorari *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 128 S.Ct. 1647, 170 L.Ed.2d 352 (2008).

tailed defendant's cross-examination of a witness for bias in violation of his right to confrontation); *cf. Thomas,* 914 A.2d at 8 (applying plain error standard to erroneous admission of DEA–7 report because appellant's trial counsel objected at trial solely on the basis that the government had not "laid proper foundation.").

The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Van Arsdall,* 475 U.S. at 681, 106 S.Ct. 1431 (citation omitted). The framework for analyzing the evidence where there has been constitutional error has been formulated in different ways. *Chapman* instructed courts to "requir[e] the beneficiary of a constitutional error [the government] to prove beyond a reasonable doubt *that the error complained of did not contribute to the verdict obtained."* 386 U.S. at 24, 87 S.Ct. 824 (emphasis added). Although the decision under review in *Chapman* had "found from 'other substantial evidence[,]' ... overwhelming[ ]" evidence of one of the petitioners' guilt, *id.* at 24 n. 7, 87 S.Ct. 824 the Court, however, found that the lower courts' tendency to find overwhelming evidence was "perhaps overemphas[ized]," *id.* at 23, 87 S.Ct. 824, and reversed the conviction, concluding that the error had "contribute[d] to the verdict," *id.* at 24, 26, 87 S.Ct. 824. The Court noted that "[al]though the case in which this occurred presented a reasonably strong circumstantial web of evidence against petitioners, it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts." *Id.* at 25–26, 87 S.Ct. 824. (citation omitted);[7] *see Brooks v. United States,* 367 A.2d 1297, 1309–10 (D.C.1976) ("Even where it may be fairly said that the government's proof assuredly would have led to conviction without the disputed items, we also must consider the likely effect of the [improper] material on the trier itself....").[8]

Two years later, the Court—affirming *Chapman*—analyzed the impact of constitutional error by considering whether the government had presented "overwhelming evidence" of guilt. *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) ("We do not depart from *Chapman;* nor do we dilute it by inference. We reaffirm it."). There, Harrington was tried together with three co-defendants—over his objection—for attempted robbery and first-degree murder. *Id.* at 252, 89 S.Ct. 1726. Confessions from his three co-defendants were admitted at trial, but only one co-defendant took the stand. *Id.* The Court affirmed the conviction notwithstanding the constitutional error—the admission of the non-testifying co-defendants' confessions implicating Harrington, *see Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)—because the "case against Harrington was so overwhelming." *Harrington,* 395 U.S. at 254, 89 S.Ct. 1726.

7. In *Chapman,* the Court applied harmless error review to the prosecutor's improper comments urging the jury to infer guilt from defendant's decision not to take the stand, a right protected by the Fifth Amendment. 386 U.S. at 24–26, 87 S.Ct. 824.

8. In *Brooks,* the erroneously admitted evidence was clothing and blood and semen-stained bedding obtained in violation of the Fourth Amendment in a case where the defendant was charged with rape, sodomy, assault, and threats. 367 A.2d at 1300, 1304, 1309.

The Court found significant that the government's case was "not woven from circumstantial evidence," *id.*—as was the case in *Chapman*—but proved by direct evidence, including the properly admitted statements of the testifying co-defendant who said that Harrington had a gun and participated in the crime. *Id.* at 253, 89 S.Ct. 1726. The improperly admitted confessions of the non testifying co-defendants—which had placed Harrington at the scene but did not say he had a gun—were "cumulative" because Harrington himself had made a statement, "which fell short of a confession but which placed him at the scene of the crime," and "[s]everal eyewitnesses placed [Harrington] at the scene of the crime." *Id.* at 252–53, 89 S.Ct. 1726.[9] In addition, Harrington had admitted that "he fled with the other three [co-defendants]; and that after the murder he dyed his hair black and shaved off his moustache." *Id.* at 253, 89 S.Ct. 1726.

In *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court emphasized *Chapman's* initial formulation, explaining that the harmless test "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but *whether the guilty verdict actually rendered in this trial was surely unattributable to* the error." *Id.* at 279, 113 S.Ct. 2078 (emphasis added). "Consistent with the jury-trial guarantee, the question . . . the reviewing court [is] to consider . . . is not what effect the constitutional error might generally be

expected to have upon a reasonable jury, but rather *what effect it had upon the guilty verdict in the case at hand.*" *Id.* (emphasis added).[10] "That must be so," the Court reasoned, "because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be— would violate the jury-trial guarantee." *Id.* at 279, 113 S.Ct. 2078 (citing *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (Blackmun, J., dissenting); *Pope v. Illinois,* 481 U.S. 497, 509– 10, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (Stevens J., dissenting)).

More recently, in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Court applied the "overwhelming evidence test" in affirming a conviction, where the trial court had improperly omitted an element of an offense from the jury instruction. *Id.* at 9, 119 S.Ct. 1827.[11] The Court distinguished *Sullivan,* explaining that the constitutional error in that case (an erroneous reasonable doubt instruction) "precludes the jury from rendering a verdict of guilty-beyonda-reasonable-doubt" and, therefore, "the entire premise of *Chapman* review is simply absent." *Id.* at 11, 119 S.Ct. 1827 (quoting *Sullivan,* 508 U.S. at 280, 113 S.Ct. 2078). Where the error does not vitiate all of the jury's findings, however, the case is subject to harmless-error review, and the reviewing court must ask, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty ab-

---

**9.** The Court cautioned, however, that "[w]e do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless." *Harrington,* 395 U.S. at 254, 89 S.Ct. 1726.

**10.** The error in *Sullivan* was a jury instruction defining "reasonable doubt" that the Court held unconstitutional in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d

339 (1990) (per curiam). *See Sullivan,* 508 U.S. at 277, 113 S.Ct. 2078.

**11.** "[T]he District Court instructed the jury that, to convict on . . . tax [fraud] offenses, it 'need not consider' the materiality of any false statement 'even though that language is used in the indictment,' " and was required by the *federal statutes* under which the charges were brought. *Neder,* 527 U.S. at 4, 6, 119 S.Ct. 1827.

sent the error?" *Id.* at 18, 119 S.Ct. 1827. The Court explained that while the reviewing court does not "become in effect a second jury," it can "in typical appellate-court fashion, ask[ ] *whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.*" *Id.* at 19, 119 S.Ct. 1827 (emphasis added). "If the answer to that question is 'no,' holding the error harmless does not 'reflect a denigration of the constitutional rights involved.'" *Id.* (quoting *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). The Court concluded that even though the jury had not been instructed that, to be convicted, the government had to prove the "materiality" of a false statement, Neder's "failure to report such substantial income [over $5 million] incontrovertibly establishes that Neder's false statements were material to a determination of his income-tax liability." *Id.* at 16, 119 S.Ct. 1827. Indeed, "[t]he evidence supporting materiality was so overwhelming ... that Neder did not argue to the jury ... that his false statements of income could be found immaterial." *Id.*

With these precedents in mind, we turn to the merits of the question before us, whether the government has shouldered its burden of showing that the erroneous admission of the DEA–7 report was harmless beyond a reasonable doubt in the context of the case against appellant.

## III.

■ As a preliminary matter, the government agrees with appellant that the admission of the DEA–7 report without having the chemist at trial was not harmless error with respect to the possession charge, because in order to prove the *completed* crime of possession of a controlled substance, the government must prove "that the substance possessed was, in fact, the controlled substance in question." *Seeney v. United States,* 563 A.2d 1081, 1083 (D.C.1989); *see* D.C.Code § 48–904.01(d) ("It is unlawful for any person knowingly or intentionally to possess *a controlled substance* ...." (emphasis added)). Here, only the DEA–7 was conclusive evidence that the green weed substance found on appellant was in fact marijuana. Although there was other evidence tending to suggest that the green weed substance was marijuana, nothing was as persuasive as the official forensic report confirming its chemical identity. Officer Davis began to testify that the preliminary field test indicated that the substance was marijuana, but the trial court cut short his testimony explaining the field test, in anticipation of the better evidence, the DEA–7 report. Thus, as the government concedes, the admission of the DEA–7 was not harmless with respect to the conviction of possession of marijuana because it is "beyond a reasonable doubt that the error ... did ... contribute to the verdict obtained." *Chapman,* 386 U.S. at 24, 87 S.Ct. 824.

The government contends, however, that the error was harmless with respect to the lesser-included offense of *attempted* possession, *see* D.C.Code § 48–904.09, because to prove that offense it need not "establish that the substance a defendant attempted to possess was the proscribed substance." *Seeney,* 563 A.2d at 1083 (noting that "Congress intended that the common law defense of impossibility should not be available to one charged with the federal crime upon which our prohibition is patterned."); *Thompson v. United States,* 678 A.2d 24, 27 (D.C.1996) ("[T]he government was not required to prove that the substance actually was cocaine in order to establish appellant's guilt of attempted distribution."). Even though the evidentiary value of the DEA–7 report in the posses-

sion case that was tried to the jury was to prove that the substance was indeed marijuana, and the offense of attempted possession that the government would now substitute does not require such proof, on the facts of this case we see no difference of the report's impact in proving either the completed or the attempted crime of possession. That is because, as the case was tried, the proof of either actual or (implicitly) attempted possession by appellant consisted chiefly of the same thing: his possession of what the government contended was marijuana.[12]

■ For attempted possession, "[t]he government must establish conduct by the defendant that is reasonably adapted to the accomplishment of the crime of possession of the proscribed substance, and *the requisite criminal intent.*" *Seeney*, 563 A.2d at 1083 (emphasis added). The *mens rea* element requires proof that appellant had the "intent to commit the crime[ ]" of attempted possession of a controlled substance (in this case, marijuana). *Blackledge v. United States*, 447 A.2d 46, 48 (D.C.1982). Here, the fact of actual possession was sought to be proven by the officer's testimony that the green weed substance fell on the floor from appellant's clothes, and that a plastic bag with a similar substance was found close to appellant in the holding cell. The same evidence would serve to prove attempted possession. The DEA–7 report was offered as proof that *what* appellant possessed was marijuana. *See Thomas*, 914 A.2d at 22 ("The DEA chemist's report was the main, if indeed not the only, proof offered by the

prosecution that the ziplocks distributed by appellant contained a measurable amount of a mixture containing cocaine, . . . ."). If the case had been charged and tried for attempted possession, the DEA–7 report similarly would prove that what appellant intended to possess was a controlled substance, marijuana.

Although the identity of a controlled substance, or the defendant's belief that he was dealing in controlled substances, may be proved by circumstantial evidence, *see Thompson*, 678 A.2d at 28 n. 7, other than the DEA–7 report, there was scant evidence to suggest that appellant intended to possess a controlled substance. This is not a case, for example, where the government sought to prove attempted possession of an illegal substance with circumstantial evidence of the defendant's intent, because the substance was not recovered or tested and evidence suggested that the substance was not the contraband the defendant believed, but was, instead, a "burn bag" (the street name for a bag containing no drugs or bogus drugs). *See id.* at 27; *cf. Carter v. United States*, 591 A.2d 233 (D.C.1991) (affirming conviction for distribution of heroin even though defendant thought he was selling cocaine). Nor was this a case where the illegal nature of the substance could be inferred from a transaction during which the defendant had manifested his intent to buy or sell a particular drug. *See Thompson*, 678 A.2d at 27–28 (evidence that defendant had a bundle of packets, handed one of the packets to someone, and got into a fight with that

---

12. The government has not suggested that the information or evidence presented in this case would have supported a conviction of attempted possession of a controlled substance other than marijuana. In his brief, appellant suggests that PCP-laced parsley could also be described as a "green weedy substance." *See Satterfield v. State*, 325 Md. 148, 599 A.2d

1165, 1167 (1992) (referring to "PCP-laced parsley"); *Davis v. State*, 319 Md. 56, 570 A.2d 855, 856 (1990) (describing process by which parsley flakes are saturated with PCP). There was no evidence, for example, of the strong odor characteristic of PCP. *See Satterfield*, 599 A.2d at 1166.

person when he complained that it was "not real," and later counted the packets "plainly manifested her intent to distribute a controlled substance."); *Seeney*, 563 A.2d at 1083 (defendant testified that he was selling PCP); *cf. Otts v. United States*, 936 A.2d 782, 786 (D.C.2007) (no plain error where DEA–7 report admitted without chemist because there was other evidence that the substance in question was heroin: police saw defendant conduct drug transactions in an "open air drug market," and when police approached, appellant put something in his mouth, chewed it, and spat out what an officer recognized as heroin residue)[13]; *Carter*, 591 A.2d at 233–34 (sustaining conviction for distribution where defendant approached undercover officer to ask whether he wanted to buy some "blow," which is a street name for cocaine). Rather, the government here sought to prove its case in the most direct manner, by establishing that the DEA–7 report established that the substance was marijuana. As a result, there understandably was little need for circumstantial evidence.

Given that, on the facts of this case, the government would similarly have to prove that the substance was marijuana in order to prove appellant's attempted possession, and in view of the conclusive finding of the DEA–7 report that the substance was marijuana, it is impossible to say that admission of the report did not "contribute" to the jury's verdict, *Chapman*, 386 U.S. at 24, 87 S.Ct. 824, or that the verdict was "surely unattributable," *Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078, to the erroneously-admitted DEA–7 report.

Nor can we say, applying *Harrington*, that this was a case where there was "overwhelming evidence" of appellant's intent to possess marijuana. 395 U.S. at 254, 89 S.Ct. 1726; *see Hill v. United States*, 858 A.2d 435, 447 (D.C.2004) (explaining that *Chapman* considers errors to be harmless if "there remains overwhelming evidence to support the jury's verdict.") (citation omitted). There remains doubt—a reasonable doubt—"that a rational jury would have found the defendant guilty absent the error," *Neder*, 527 U.S. at 18, 119 S.Ct. 1827, because "[a] reasonable jury might have received a significantly different impression" of the government's case had the DEA–7 report not been admitted. *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431.

> [T]here lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about. "If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party."

*Old Chief v. United States*, 519 U.S. 172, 188, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (alteration in original) (quoting Stephen A. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence*, 66 CAL. L.REV. 1011, 1019 (1978)); *cf. Greer v. United States*, 697 A.2d 1207, 1208, 1212 (D.C.1997) (not harmless error where trial court instructed the jury that it could not

---

**13.** After the issuance of this opinion but before its publication in the Atlantic and Maryland Reporters, *Otts* was vacated on other grounds, *see* 2007 D.C.App. LEXIS 221 (D.C.April 24, 2008), and reissued, *see* 2007 WL 5123819, 2007 D.C.App. LEXIS 843 (D.C.April 24, 2008).

base its verdict "on evidence that has not been presented," because the defense could properly argue that there was "no scientific or physical evidence, such as fingerprints, photographs, or videotape, ... to corroborate [police officer's] account of what happened"). Here, the jury could well have had a doubt about the government's case if the prosecution did not proffer the type of scientific evidence establishing the identity of the substance that is commonly expected.

Following *Neder,* the government frames the issue as "whether it is clear beyond a reasonable doubt that a rational jury would have found appellant guilty of attempted possession of a controlled substance in the absence of the improperly-admitted DEA–7 report." Or put another way, does the record contain evidence that "could rationally lead to a contrary finding," *i.e.,* that the green weed substance was not marijuana? *Neder,* 527 U.S. at 19, 119 S.Ct. 1827. In answering that question in the negative, the government points to the following evidence the jury had to consider: the officer's testimony that appellant kept the "green weed substance" in his crotch, an inference that appellant attempted to rid himself of the plastic bag that was found in the holding cell, the officer's partial explanation of the positive field-test result, and appellant's giving an alias when he was arrested. But even if such circumstantial evidence were *sufficient* to convict, it does not suffice to overcome the presumption of harm flowing from constitutional error. *See Fahy v. Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) (noting that evaluation for harmless error is not concerned with "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of."). This was not a case, like *Harrington,* in which the defendant himself made

incriminating admissions and there was direct evidence of his participation in the crime. *Cf. Harrington,* 395 U.S. at 254, 89 S.Ct. 1726. Unlike *Harrington,* the case against appellant was "woven from circumstantial evidence." *Id.* Here the circumstantial evidence of appellant's intent—*e.g.,* Officer Bolden's testimony that the substance came from appellant's crotch area—could have been subject to question in light of Officer Petz's testimony that no contraband was found on appellant when he was "searched thoroughly from head to toe" at the time of arrest and the fact that Officer Bolden was the only witness to have seen the green weed substance fall from appellant's pants.

Nor is this a case like *Neder,* where by the very nature of the defendant's admitted conduct, the jury would have been compelled to find a necessary element of the crime. In *Neder,* the Court found it "uncontroverted" that the defendant's false tax statement was "material" (materiality being the element erroneously omitted from jury instructions) and that the defendant "did not, and apparently could not, bring forth facts contesting" it. 527 U.S. at 16, 18–19, 119 S.Ct. 1827. In this case, the necessary element is intent to possess marijuana. There can be no doubt that if the jury credited Officer Bolden's testimony that the green weed substance fell from appellant's crotch area, it could infer that appellant not only possessed it—or intended to posses it—but also wished to conceal it. But to convict, the jury would also have to infer that what appellant intended to conceal was marijuana. Hiding a green weed substance in a private area of the body is not commonplace and surely permits an inference that it might be—maybe more likely than not—contraband, *see Jefferson v. United States,* 906 A.2d 885, 888 (D.C.2006) (per curiam) (noting that the crotch area is "a uniquely private part of

the body not normally used for carrying lawfully-held personal effects"), but here the evidence was not "uncontroverted" or "overwhelming" that it came from appellant and that he believed it was marijuana. Significantly, unlike in *Neder*, appellant did not concede the fact from which the jury could have inferred that he attempted to possess the green weed substance and that he attempted to dispose some of it underneath the bench. To the contrary, he contested Officer Bolden's testimony that the green weed substance came from appellant, as defense counsel argued in closing:

> Ladies and gentlemen, we know that they had a camera in that cell, and they could have taken a picture of this marijuana on [appellant], and they didn't.[14] That's because there was no marijuana. And Officer Davis took the stand, and he told you that he's the one who recovered the alleged marijuana off the ground. But that's not what his report says.... He told you I wrote down what Bolden told me, and that was it.

Defense counsel cast further doubt on Officer Bolden's credibility: "You saw how Officer Bolden was. You saw his demeanor. You should evaluate that." During cross-examination, Officer Davis, who took the photographs in the holding cell, testified that he did so at Officer Bolden's request and admitted that he only saw the green weed substance on the ground and never on appellant, even though on the report that he filled out he wrote that it had been found "on [appellant's] person ... [based on] information that I received from Officer Bolden." See note 5, *supra*.

Any doubt that the jury could have had, however, was completely dispelled by the erroneously admitted DEA–7 report, which provided objective evidence establishing that the substance was marijuana, and thus "filled in" what otherwise might have been understood either as an (admittedly eccentric) act of concealment of an innocuous substance, or of a different illegal substance. See note 12, *supra*.

The additional green weed in a plastic bag found under the bench in the cell where appellant was held could corroborate that appellant possessed it,[15] but does not add much to the jury's ability to conclude that the substance was marijuana, and suffers from the same evidentiary weakness, that Officer Bolden, whose credibility was challenged, was the only witness. Officer Davis's testimony about the field test is not as probative as the DEA–7 report and, in any event, the officer's explanation was cut short because the trial court anticipated admitting the DEA–7 report. Thus, evidence about the field test was not developed enough to persuade the jury of its reliability and to establish the chain of custody. Finally, we think that appellant's giving of an alias to the police adds little to the evaluation of harmless error with respect to appellant's intent. See *Van Ness v. United States*, 568 A.2d 1079, 1083 (D.C.1990) ("This court has held that a defendant's use of a name different from his own can *support an inference* that he was conscious of his guilt." (emphasis added)). Although appellant's giving of an alias would support an inference that he was conscious of guilt for *something*, it was not necessarily to distance himself from the green weed substance, which did

---

**14.** Officer Bolden admitted that there was no photograph of the green weed substance on appellant's person:

> Defense Counsel:.... Officer Bolden, you never took pictures back at [the police station] that shows any marijuana on [appellant], isn't that true?

> Officer Bolden: That is true.

**15.** There was no evidence, however, that the cell had been cleaned before appellant was placed there.

not come to light until after he gave the alias. In this case, for example, appellant was arrested because he was suspected of gun (not drug) offenses, and he was on supervised release;[16] thus, it is equally possible that he would have given an alias in order to avoid having his release revoked.[17]

We conclude that, on this record, the erroneous admission of the DEA–7 report without an opportunity to cross-examine the chemist who prepared it was not harmless beyond a reasonable doubt as to the offense of attempted possession of marijuana because we cannot say that the error did not contribute to the verdict, and the government did not otherwise present overwhelming evidence that appellant intended to possess marijuana.

*Reversed and remanded for new trial.*

---

16. The jury, however, was not aware of appellant's release status; the matter was discussed between the judge and the parties during a pre-trial hearing.

17. The fact that appellant was initially seen in the area where the police were responding to a drug complaint did not permit the jury to infer, much less beyond a reasonable doubt, that appellant intended to possess drugs when there was no testimony linking up appellant's presence to the complaint about drug activity. *See Smith v. United States,* 558 A.2d 312, 316 (D.C.1989) (en banc) ("[W]e have been careful to emphasize that 'this familiar talismanic litany [high drug trafficking area], without a great deal more, cannot support an inference that appellant was engaged in criminal conduct.'" (quoting *In re D.J.,* 532 A.2d 138, 143 (D.C.1987))).